UNITED STATES of America and Robert W. Wallace, Plaintiffs–Appellees,

v.

Claude R. WILSON, Jr., and Modes, Inc., Defendants–Appellants.

No. 88–1157.

United States Court of Appeals, Fifth Circuit.

Feb. 8, 1989.

Rehearing Denied March 7, 1989.

Claude R. Wilson, Dallas, Tex., pro se.

Alan J. Hostetter, Jr., Golden, Potts, Boeckman & Wilson, Dallas, Tex., for defendants-appellants.

Chris Ludke, Atty., Office of Regional Counsel, U.S. Customs Service, Houston, Tex., Mary Ann Moore, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiffs-appellees.

Before REAVLEY, HIGGINBOTHAM and SMITH, Circuit Judges.

PER CURIAM:

### I. *Factual and Procedural Background.*

The defendants-appellants in this case are Modes, Inc. ("Modes"), a business engaged in importing jewelry from abroad, and Claude R. Wilson, Jr., its attorney. Modes and Wilson had been served with administrative summonses, pursuant to 19 U.S.C. § 1509(b), by appellee Robert W. Wallace, a Senior Special Agent with the United States Customs Service ("Customs"). Wallace sought production of certain records required to be kept by Modes

under 19 U.S.C. § 1508, in order to ensure compliance with the Customs laws. The records were needed for a proper determination of the possible civil and criminal liability of Modes. Appellants obtained an extension of time to comply with the summonses so that Wilson and Tim Millis, his investigator, could travel to the Far East to secure evidence from business associates.

Upon returning from abroad to Dallas/Fort Worth International Airport, Millis was carrying in his briefcase Wilson's legal files pertaining to Customs's investigation of Modes. When Millis passed through Customs's checkpoint, an agent searched the briefcase containing the files and took them, refusing to return them to Millis or Wilson despite their protests. No reason was given for the seizure. The files were returned by Customs two days later, but because Millis had not been allowed to make an inventory prior to their being taken, he was unable to determine whether any of the documents had been removed and of course had no way of knowing whether they had been photocopied.

Subsequently, Wallace issued and served two new summonses on Modes and Wilson, identical to the first two except that the time period for the records sought differed somewhat, i.e., 10/83—1/85 rather than 1/83—1/85. Appellants met with Wallace as required by the later summonses but, based upon the attorney-client privilege and the fifth amendment right against self-incrimination, refused to produce documents.

Wallace and the government filed in district court a petition to enforce the summonses, pursuant to 19 U.S.C. § 1510. That court, pursuant to 28 U.S.C. § 636(b)(1), referred the petition to a magistrate "for disposition." After a hearing, the magistrate issued findings and recommendations, concluding that the summonses should be enforced. The district court entered an order adopting the magistrate's findings and recommendations after considering Modes and Wilson's objections. That order was stayed pending this appeal.

## II. Standard of Review Applied by District Court.

■ Under the plain language of 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and all of the relevant cases, a district court must engage in *de novo* review where a party has objected to a magistrate's decision. However, the district judge in this case announced that he was applying the "clearly erroneous, abuse of discretion and contrary to law" standard of review, which is appropriate only where there has been no objection to the magistrate's ruling. The only dispute is whether the district judge actually engaged in *de novo* review despite announcing an improper standard. If he did not, we must remand.

■ The government cites authorities to the effect that a court may be found to have reviewed a magistrate's decision *de novo* even if it uses pro forma language indicative of a different standard. "[I]n providing for a '*de novo* determination,' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980). *Accord, Aluminum Co. of Am. v. E.P.A.*, 663 F.2d 499, 502 (4th Cir.1981) (use of "clearly erroneous" in district court's opinion does not preclude possibility that *de novo* review occurred).

The government's reliance upon these cases is misplaced. *Raddatz*'s distinction between a *de novo* hearing and *de novo* review does not really help the government, as Modes does not argue that a hearing should have occurred but only that the district court obviously did not engage in *de novo* review. Furthermore, the language concerning the "clearly erroneous" term in *Aluminum Co.* is dictum: The Fourth Circuit proceeded to find that *de novo* review had not occurred in that case, even though the district court patently had engaged in more extensive review than occurred here. Thus, that court, although de-emphasizing the significance of labels, ultimately held that "the district judge did

not clearly indicate that he afforded the parties a *de novo* determination. In order to satisfy the Act, he must do so." *Id.* at 502.

Even if we were to adopt *Aluminum Co.* and fashion its dictum into a test for determining whether *de novo* review has occurred, the judge in this case still has not given sufficient indication that he made his own determination based upon the record and unrestrained by the findings and conclusions of the magistrate. The few passages from the district court's order cited by the government as revealing *de novo* review are inadequate. We therefore remand and instruct the district court to review the magistrate's ruling on the subpoena *de novo*. Moreover, because of the apparent confusion revealed in the record, we think it appropriate to outline briefly the law that should be applied on remand.

### III. *Government's Burden in Getting Subpoena: Abuse of Process.*

■ The general test for enforcement of an administrative subpoena is enunciated in *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), involving an IRS investigation. This test applies in the customs context as well. *United States v. Frowein*, 727 F.2d 227, 230 (2d Cir.1984) (acquiescing in a district court's application of *Powell* to a customs case). Under *Powell*, the government must establish four elements: (1) There must be a legitimate purpose of the investigation; (2) the specific inquiry must be relevant to that purpose; (3) the information sought must not already be in the government's possession; and (4) all internal administrative procedures must have been followed. 379 U.S. at 57–58, 85 S.Ct. at 254–55.

■ Once the government has met its burden on each of the four elements, the burden shifts to the defendant to challenge the summons on any appropriate ground—here, to show that enforcement would represent an abuse of the summons process. *See United States v. Barrett*, 837 F.2d 1341, 1344–45 (5th Cir.1988) (en banc). Therefore, on remand a defendant must establish abuse of process as a defense to

enforcement if Customs meets its burden on the other four elements.

The thrust of Modes's argument that an abuse of process occurred is that the airport seizure of the documents was an illegal search and seizure, in violation of the fourth amendment, that enabled the government to make wrongful discoveries. Modes asserts that Customs officials, realizing that they could not lawfully retain the documents and use them against Modes, returned them and then pursued the subsequent procedure of obtaining a discovery subpoena, knowing then what the documents contained. Modes also contends that this process denied it the opportunity to raise effectively its attorney-client, work-product, and self-incrimination challenges to the discovery.

■ In *SEC v. ESM Government Securities, Inc.*, 645 F.2d 310 (5th Cir. Unit B May 1981), we established the principle that the improper conduct of an administrative investigation may constitute an abuse of process so as to bar enforcement of a subpoena. That case involved an SEC investigation in which that agency had tricked a company into disclosing information to it through friendly overtures and failure to disclose a pending formal investigation. We held "... that fraud, deceit, or trickery is grounds for denying enforcement of an administrative subpoena...." *Id.* at 317. At the same time, we cautioned that "the court should not invoke an automatic exclusionary rule." *Id.* Rather, a case-by-case, totality-of-the-circumstances test is appropriate, including consideration of the government's good faith and the harm caused by any unlawful conduct. *Id.* (citing *United States v. Bank of Moulton*, 614 F.2d 1063, 1065 (5th Cir.1980)).

■ A plaintiff must establish affirmative answers to three questions in order to have a subpoena denied based upon abuse of process in a circumstance involving deceit. *First,* did the government act intentionally or knowingly? *Second,* was the defendant misled? *Third,* did the subpoena result from information obtained

through the improper access to defendant's records? *Id.* at 317–18.

The *ESM* test requires some modification in order to make sense in the context of the instant case. Here there is obviously no trickery involved: The documents were seized outright, based upon Customs's being in a position of power at a point of entry. However, if Modes can show that the government acted without authority and in bad faith, its claim for abuse of process is even stronger than that in *ESM,* since the individuals here did not need to be misled but instead were *forced* to divulge the documents. Thus, the first two elements of the *ESM* test, as refashioned to meet these circumstances, require a showing that Customs lacked the authority to seize the documents and acted in bad faith in doing so.

The third element is more problematic. At the time of the search and seizure, there were two outstanding subpoenas that apparently covered the seized documents. New subpoenas, which also covered these papers and were identical except for the shorter time period covered, were issued shortly after the seizure. Hence, Modes cannot establish that the "subpoenas are the result of the ... allegedly improper access...." *ESM, id.* at 318. The description of the documents was fashioned prior to the incident at the airport, as was Customs's effort to obtain the documents. Under these circumstances, and irrespective of how distasteful the events at the airport may have been, Modes cannot establish an abuse-of-process defense under ESM.

In its *de novo* review, therefore, the district court should first determine whether Customs has carried its burden on all four elements of the *Powell* test. If this burden is met, the subpoenas may be enforced. We leave it entirely in the hands of the district court to make the requisite findings and intimate no view as to them.

### IV. *Denial of Discovery.*

If Modes could prove that Customs has possession of the information in the documents through having photocopied or read them, the third element of the government's argument for enforcement under *Powell* would be rebutted. Modes claims that the denial of discovery relating to this issue prevented it from being able fully to make its case and therefore constituted an abuse of discretion. Specifically, Modes asserts that the district court relied totally upon Wallace's testimony although other agents were involved in the investigation and had access to the seized documents; broader inquiry was prevented because discovery was denied.

This argument fails. Whatever the power of a district court to order discovery in connection with enforcement actions (a matter not now before us), the denial of discovery here does not constitute an abuse of discretion. It is not at all clear that the intended discovery was so important that its denial was egregious. In fact, Modes makes much of such mundane matters as the court's quashing its request to depose Wallace in favor of relying upon his in-court testimony. No abuse of discretion occurred.

### V. *Conclusion.*

The case is REMANDED to the district court for *de novo* review in accordance with the above-outlined legal principles. The denial of further discovery is AFFIRMED, although of course on remand the district court is free to make whatever further discovery rulings it deems appropriate.

In closing, although we do not finally resolve the dispute in question, we think it appropriate, whatever the outcome upon remand, to admonish Customs for what can only be described as outrageous and reprehensible behavior on the occasion in question. We trust that our warning today will suffice to deter any future similar conduct.