UNITED STATES, PLAINTIFF *v.* MODES, INC. AND
JAIKISHAN BUDHRANI, DEFENDANTS

Court No. 89–04–00206

(Decided March 4, 1994)

*Frank W. Hunger,* Assistant Attorney General; *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, U. S. Department of Justice; *Velta A. Melnbrencis,* Assistant Director; *(Michael S. Kane,* Esq., Attorney), for plaintiff.
  *Wilson, White & Copeland (Claude R. Wilson, Jr.,* Esq.), for defendants.

OPINION AND ORDER

NEWMAN, *Senior Judge:* Pursuant to Rule 68 of this court, defendants seek attorneys' fees and expenses under the Equal Access to Justice Act, 28 U.S.C. §§ 2412(d)(1)(A) and 2412(b)(1988) (the "EAJA"). The court finds that the motion is without support in law because the prerequisites of the EAJA are not satisfied. Defendants' motion is accordingly denied.

BACKGROUND

The instant motion represents, hopefully, the final phase of a protracted litigation involving several courts and considerable pre-trial motion practice. Familiarity with the earlier proceedings is presumed, although the relevant aspects are summarized here for convenience.

In 1984, defendants were engaged in the importation of "twist beads" under TSUS item 740.38, which were entered free of duty under the Generalized System of Preferences ("GSP"), 19 U.S.C. § 2461, *et seq.* Defendants submitted false invoices to the Customs Service, misstating the value of the merchandise. Although the false statements did not result in the nonpayment of any duty, they were in violation of 19 U.S.C. §§ 1484, 1485, which prohibit false declarations of value in Customs invoices and provide for statistical compilation by the Treasury Department of, among other things, the value of goods imported into the United States.

In August 1984, Customs discovered defendants' double invoicing scheme and commenced an investigation. The Government subsequently issued administrative summonses seeking the relevant invoices, waybills and other entry documents at issue in this case. Prior to the return date listed on the summonses, a Customs agent at Dallas/Fort Worth Airport conducted an illegal search of certain files belonging to defendants' counsel, in violation of the fourth amendment. A second set of summonses was subsequently issued, which defendants resisted. The United States Court of Appeals for the Fifth Circuit held that the summonses could be enforced. *See United States v. Wilson,* 864 F.2d 1219 (5th Cir.), *cert. denied,* 492 U.S. 918 (1989).

Customs issued a pre-penalty notice demanding the payment of a civil penalty in the amount of $3,867,856.00. Subsequently, defendants submitted a petition for mitigation of the penalty, and in accordance with 19 C.F.R. § 171.31a (1988), on February 28, 1989 Customs rendered a final written determination and advised defendants that it would mitigate the penalty to $966,964.00. Although Customs stated that Modes could submit a supplemental petition, it conditioned any reconsideration of the mitigation issue upon defendants' submission to an extension of the statute of limitations. When defendants failed to agree to such an extension, the Government commenced the instant litigation to recover a civil penalty pursuant to section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1988). *See generally, United States v. Modes, Inc.,* 13 CIT 780, 723 F. Supp. 811 (1989).

Subsequent to the filing of this action, defendants filed a motion to suppress the invoices and other documentation that had been illegally seized by Customs. This court held that, although the airport search violated the fourth amendment, the independent source exception to the fourth amendment exclusionary rule applied and accordingly held that the contents of the briefcase should not be suppressed. *See United States v. Modes, Inc.,* 16 CIT 189, 787 F. Supp. 1466, 1475–76 (1992). Subsequently, the court granted the Government's motion for partial summary judgment on the count of fraudulent violations of section 592, i.e., the highest degree of culpability under the statute. *See United States v. Modes, Inc.,* 16 CIT 879, 804 F. Supp. 360 (1992).

A bench trial was then conducted on April 1, 1993 by the undersigned to resolve the remaining factual issues pertaining to the subject of *quantum*. Prior to trial, the parties stipulated that the domestic value of the merchandise was $2,325,000.[1] After analyzing several relevant factors in light of the evidence adduced at trial, the court determined that a penalty of $50,000 was appropriate and entered judgment in that amount in favor of the Government. *See United States v. Modes, Inc.,* 826 F. Supp. 504 (1993). The Government had sought the maximum penalty provided by the statute, and initially appealed the court's decision as to *quantum,* but obtained an order of voluntary dismissal from the United States Court of Appeals for the Federal Circuit pursuant to Fed. R. App. P. 42(b) as of December 3, 1993. Defendants now seek to recover attorneys' fees and expenses under the EAJA.

DISCUSSION

I

Fundamentally, a statute authorizing the recovery of attorneys' fees and expenses from an agency of the United States constitutes a waiver of sovereign immunity, and must be strictly construed. *Library of Congress v. Shaw,* 478 U.S. 310 (1986). In the case at bar, defendants base

---

[1] 19 U.S.C. § 1592(c) specifies that "[a] fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise."

their entitlement to attorneys' fees and expenses on either of two provisions of the EAJA. First, defendants predicate recovery on 28 U.S.C. § 2412(d)(1)(A) which provides, in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

In the alternative, defendants argue that they are entitled to recover under 28 U.S.C. § 2412(b), which states:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

As each of the above statutory provisions plainly demonstrates, the threshold requirement for recovery of attorneys' fees and expenses under the EAJA is that the applicant be a "prevailing party." Defendants urge that they are "prevailing parties" because the Government obtained a penalty well below the amount it had sought. The Government counters that it is the prevailing party, and not defendants, because it obtained judgment on the merits at the summary judgment phase of the litigation, and recovered a penalty against defendants. The court agrees with the Government.

A prevailing party is defined as one that "'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1982) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978). *See also, A. Hirsh, Inc. v. United States,* 14 CIT 23, 747 F. Supp. 723, 725 (1990), *aff'd,* 948 F.2d 1240 (Fed. Cir. 1991). Here, the prevailing party under the relevant analysis is, clearly, the Government. The court entered summary judgment in favor of plaintiff, finding that defendants were liable for fraudulent invoicing in connection with each of the 74

entries listed in the complaint. The Government further obtained a substantial penalty.[2]

Notwithstanding the language of the statute and the obvious force of precedent, defendants urge that, because they were assessed a penalty that was little more than one percent of the amount sought, they are prevailing parties as to "99% of the amount at issue." Defendants' Brief at 2. However, defendants offer no authority for the novel proposition that the *size* of the penalty ultimately awarded, either in relation to the maximum amount allowable under the statute or the *quantum* sought by the Government, should be determinative of the Government's status as a prevailing party under section 2412.

Moreover, the court observes that in one published decision of the United States Court of Appeals for the Eighth Circuit, a nearly identical proposition was considered and soundly rejected within the context of the EAJA. In *Beall Const. Co. v. Occupational Safety & H. Rev. Com'n*, 507 F.2d 1041 (8th Cir. 1974), OSHA compliance officers assessed a proposed penalty against a contracting firm in the amount of $31,744 for one serious violation of OSHA regulations due to the improper barricading of an elevator shaft in a multi-story building then under construction in Fremont, Nebraska. OSHA also assessed penalties amounting to $3,698 for several other violations found to exist on the construction site. *See id.* at 1043. An Administrative Law Judge vacated the proposed penalty of $31,744, finding that the shaft was properly barricaded, but found that there was substantial evidence to support the other penalties. On review of the Administrative Law Judge's decision, the Occupational Safety and Health Review Commission affirmed as to the existence of the violations but reduced the penalties yet further, to $620! *See id.*

The construction company appealed the decision on constitutional grounds, and further advanced the theory that, because it had succeeded in obtaining dismissal of one penalty and reduction of the remaining ones, it was a prevailing party within the meaning of section 2412. Inasmuch as the Eighth Circuit found no error in the Commission's findings that the construction company had violated OSHA regulations and affirmed the award of a penalty, that court accordingly held that the petitioner was not a prevailing party and was not entitled to recover costs or attorneys' fees. *See id.* at 1047.

Similarly, in *Johnson v. Secretary Of/And U.S. Dept. of HUD*, 594 F. Supp. 265, 267 (E.D. La. 1984) the Government took the position that it, not the plaintiff, was the prevailing party because three of the plaintiff's four claims had been dismissed, and the plaintiff had only obtained a mere fraction of his claimed damages of over one million dollars. The *Johnson* court rejected the Government's position, holding that the

---

[2] It should be recalled that at common law, a plaintiff who obtains judgment is the prevailing party, even if the plaintiff recovers nothing more than nominal damages. *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10 *Federal Practice and Procedure*, § 2667 (2d. ed. 1983); *Three-Seventy Leasing Corp. v. Ampex Corp.*, 528 F.2d 993 (5th Cir. 1976); *Burk v. Unified School Dist. No. 329*, 116 F.R.D. 16, 17–8 (D. Kan. 1987).

plaintiff was entitled to fees and expenses under the EAJA because the plaintiff had obtained success on one of his claims, even if the amount of the recovery was small. *See id.* Thus, following the logic of *Beall* and *Johnson,* the Government is the prevailing party here because it obtained judgment under section 592, notwithstanding that the sum it recovered in damages was far below the amount prayed for in the complaint.

## II

Although the court bases its decision upon the determination that the instant defendants are not prevailing parties, it should be noted that defendants' application would fail in any event, since the remaining elements of a claim under sections 2412(d)(1)(A) and 2412(b) are not satisfied in this case. The court will briefly address each of the two provisions in turn.

## A

Defendants seek to recover fees and expenses under section 2412(d)(1)(A), which provides that a party prevailing against the United States shall recover fees and expenses "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The term "substantially justified" has been interpreted by the Supreme Court to mean, "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Consequently, the Government must show that it "was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts. The Government must show that it has not 'persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation.'" *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1467 (Fed. Cir. 1986) (en banc) (emphasis in original) (quoting *Gava v. United States,* 699 F.2d 1367, 1375 (Fed. Cir. 1983) (Baldwin, J., dissenting)). In the same vein, it must be recalled that, even if defendants could be said to be prevailing parties in any stage of this case, the court's inquiry as to whether the Government's position was substantially justified for EAJA purposes is distinct from the decision on the merits. *See United States v. F.H. Fenderson, Inc.,* 11 CIT 657, 661, 670 F. Supp. 1015, 1018 (1987) (citing *Luciano Pisoni Fabbrica Accessori v. United States,* 11 CIT 280, 658 F. Supp. 902, 905 (1987), *aff'd,* 6 Fed. Cir. (T) 57, 837 F.2d 465 (Fed. Cir.), *cert. denied,* 488 U.S. 819 (1988)).

Defendants compare the instant action to *ICI Worldwide, Inc. v. United States,* 14 CIT 201 (1990), in which the court granted an award of attorneys' fees and expenses to the plaintiff. There, ICI Worldwide had challenged Customs' denial of its protest in connection with the importation of Halloween costumes, which Customs had erroneously classified as "wearing apparel" under TSUS item 384.94, rather than "toy figures" or "toys" under TSUS items 737.40 and 737.98, respec-

tively. The court determined that Customs' position was not substantially justified, because a Customs Service Headquarters Ruling published prior to the denial of the protest had plainly contradicted its stated position that the costumes were wearing apparel. *See id.* Fees and expenses were granted, inasmuch as the agency's denial of the protest was without substantial justification and "[p]laintiff should not have been put to the expense of commencing a lawsuit." *Id.* at 202.

The court is not persuaded that *ICI Worldwide* is apposite to the case at bar. Examining the merits of the instant case, the court is fully satisfied that here the Government's position was, in fact, substantially justified throughout the prosecution of its case against defendants. Indeed, the Government enjoyed unqualified success at every stage, with the sole, qualified exception of the *quantum* proceedings. From the beginning, the Government possessed evidence of double invoicing on the part of defendants. As to the issue of liability at least, there can be no question but that the Government's position was well grounded in law and fact. Turning to the penalty proceedings, it is true that the Government obtained a penalty that was well below the amount it had sought. Nevertheless, even at the penalty stage, the Government's position could hardly be deemed to be without substantial justification. The court heard evidence relating to, *inter alia,* defendants' intentional violation of the statute, and in consideration of which the court assessed a penalty that was not insubstantial. Additionally, the legitimacy of the Government's interest in ensuring the integrity of the GSP program, as well as the accuracy of entry documentation, is undeniable and also constituted substantial justification for the prosecution of this case. *See United States v. F.A.G. Bearings, Ltd.,* 8 CIT 294, 296, 598 F. Supp. 401, 403–4 (1984) (purpose of section 592 is to ensure accuracy in submission of Customs documentation). Thus, defendants assuredly would not be entitled to recover under section 2412(d)(1)(A).

## B

Defendants further seek to recover fees and expenses in conformity with section 2412(b), which provides that the United States "shall be liable for * * * fees and expenses to the same extent that any other party would be liable under the common law." Accordingly, fees and expenses are recoverable in cases where the Government "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Bonanza Trucking Corp. v. United States,* 11 CIT 436, 441, 664 F. Supp. 1453, 1457 (1987) (quoting *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 129 (1974)). Courts grant awards under section 2412(b) only "'in exceptional cases and for dominating reasons of justice.'" *Beaudry Motor Co. v. Abko Properties, Inc.,* 780 F.2d 751, 756 (9th Cir.), *cert. denied,* 479 U.S. 825 (1986) (citations omitted). Moreover, defendants' burden under the bad faith standard is yet more exacting than under the substantial justification test. *See D & M Watch Corp. v. United States,* 16 CIT 285, 795 F. Supp. 1160, 1171 (1992).

It is, of course, basic to the court's review of this matter that public officials are *presumed* to have acted in good faith and in the spirit of fair dealing in the discharge of their official duties. *See United States v. Roses, Inc.,* 1 Fed. Cir. (T) 39, 43, 706 F.2d 1563, 1566 (Fed. Cir. 1983) (citing *Kalvar Corp. Inc. v. United States,* 543 F.2d 1298, 1301–2 (Ct. Cl. 1976), *cert. denied,* 434 U.S. 830 (1977) (court requires "well-nigh irrefragable proof" that government was motivated by malice or a specific intent to injure private party)). Here, defendants paint for the court a picture of egregious governmental misconduct. In particular, defendants make much of the illegal search of Wilson's files at the Dallas/Fort Worth Airport. Continuing, defendants suggest that the Government abused the legal process, causing them to expend vast sums in legal defense that were out of proportion to the wrong committed. Defendants further state that they were "never given an opportunity to settle this case for anything they could afford to pay." Defendants' Brief at 4–5. Defendants baldly conclude that the Government "continued to beat defendants to death with the legal process." *Id.* at 5.

The issues surrounding the Government's alleged bad faith are in large part the subject of "finger pointing" and accusations expressed through unsworn statements in the briefing papers. Suffice it to say at this juncture, however, that defendants have not established that the Government's litigation tactics bore the hallmarks of harassment. The court's inquiry here is directed at whether the Government acted in bad faith in the course of its administrative proceedings as well as its prosecution of the instant litigation. In view of all the facts and circumstances, the court considers that the illegal search and seizure of Wilson's files, while disturbing, can and should be viewed in isolation from the Government's overall conduct of the proceedings against defendants.[3] Further, the court finds that the same factors that provided substantial justification for the Government's posture, both at the administrative level and during the litigation, belie any suggestion that the Government's prosecution of this case proceeded from anything other than a legitimate enforcement of the Customs laws. In particular, it appears that defendants obtained the full measure of administrative due process to which they were entitled before initiation of this lawsuit. *United States v. Modes, Inc.,* 723 F. Supp. 811 (1989). As to the litigation, there is no evidence to suggest that the Government's case was not meritorious, or that its motives in seeking the relief authorized by the statute were in any way suspect. In brief, that the court took defendants' financial difficulties into consideration, and thereby imposed a relatively lenient penalty, reflected neither bad faith on the Government's part nor a victory for defendants.

---

[3] It is not insignificant that the Government had already demanded production of the invoices before the illegal seizure of Wilson's files. *Wilson,* 864 F.2d at 1223.

## Conclusion

It bears repetition that defendants' application for attorney's fees and expenses is as devoid of support in caselaw and statute as it is in common sense. Defendants were not "successful as to 99% of the relief sought"; nor did the Government's case lack merit. Rather, the court arrived at a calculation of the award after considering the evidence adduced at trial in the light of all factors relevant to the imposition of a penalty. The court's restraint in assessing that penalty in no way diminished or excused defendants' disgraceful conduct in using false invoices to assist their foreign associate to violate his nation's tax laws. The court's decision in this matter, 826 F. Supp. 504, speaks entirely for itself, and in no respect lends support to defendants' claim for fees and expenses under the EAJA Indeed, by their application defendants strayed dangerously close to the point where the court might have considered the imposition of sanctions against them.

Defendants' application for attorney's fees and expenses is DENIED. IT IS SO ORDERED.