IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-50117
_____


MICHAEL A. WARREN,

                                    Petitioner-Appellant,

                    versus

R.D. MILES, Warden of Federal Correction
Institute at Bastrop, Texas,

                                    Respondent-Appellee.

                    _____
          Appeal from the United States District Court
               for the Western District of Texas

                    _____
                    October 13, 2000
Before BARKSDALE and BENAVIDES, Circuit Judges, and VELA[*],
District Judge.

BENAVIDES, Circuit Judge:

     Michael A. Warren appeals the dismissal of his habeas corpus

petition filed in the district court for the Western District of

Texas pursuant to 28 U.S.C. § 2241(c)(3).  Warren maintains that

the Federal Bureau of Prisons (BOP) violated the Constitution's

prohibition of ex post facto legislation by applying its

regulations to him retroactively, thereby increasing the

punishment for his offense.  He also argues that the BOP abused

its discretion under 28 U.S.C. § 3621(e) by promulgating

regulations that effectively render all prisoners who receive a

_____

     [*]District Judge of the Southern District of Texas, sitting
by designation.

sentence enhancement for possession of a dangerous weapon ineligible for early release following completion of a residential Drug Abuse Program (DAP).  Finally, Warren contends that the district court violated his due process rights in failing to make de novo findings of fact with respect to the preliminary sentencing report that served as the foundation for his sentence enhancement.  We ultimately find no merit in Warren's arguments and, therefore, AFFIRM the ruling of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 1995, Warren pled guilty to conspiracy to distribute and distribution of cocaine base and heroin as defined in 21 U.S.C. § 846; he was sentenced to 72 months of imprisonment, followed by five years of supervised release.  The district court enhanced Warren's sentence by two points pursuant to section 2D1.1(b)(1) of the Sentencing Guidelines based on information in Warren's preliminary sentencing report that he had access to a dangerous weapon during the course of the conspiracy.

In February 1996, Warren enrolled in a DAP with the approval of officials at the federal prison in Bastrop.  Section 3621(e) allows prisoners convicted of "nonviolent" offenses who complete a DAP to apply for sentence reductions of up to one year at the discretion of the BOP director. *See* 18 U.S.C. § 3621(e)(2)(b).  On February 8, 1996, prison officials advised Warren that he was ineligible for early release under section 3621 because of his sentence enhancement.  In that same month, Warren filed a motion

2

to vacate his sentence, specifically the enhancement, under 28 U.S.C. § 2255.  The district court for the Northern District of Texas denied that motion, adopting a magistrate judge's finding of sufficient evidence to support the two-point enhancement.

After successfully completing the DAP in December 1996, Warren requested reconsideration for early release pursuant to section 3621(e) of title 28.  Because Warren's sentence had been enhanced for possession of a weapon, the BOP again determined that he had committed a "crime of violence" and was thus ineligible for early release under section 3621(e).

In March 1999, Warren filed this habeas corpus petition pro se in the district court for the Western District of Texas. After the Government replied to Warren's petition, Warren moved for summary judgment on the pleadings on August 19, 1999.[1]  On January 14, 2000, the magistrate judge filed a Report and Recommendation recommending that the district court deny Warren's petition.  Warren objected to the report's findings in a timely manner.  On January 23, 2000, the district court issued a Final Judgment and Order adopting the magistrate's report and denying Warren's petition for relief.

### DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  When reviewing the denial of a habeas corpus petition,

---

[1] On November 11, 1999, Warren filed a motion with this court seeking a writ of mandamus instructing the district court to grant summary judgment.  This court denied Warren's motion without prejudice, instructing him to re-file in 60 days if the district court had not replied to his motion.

3

we review the district court's determinations of law de novo and its findings of fact for clear error. *See Venegas v. Henman*, 126 F.3d 760 (5th Cir. 1997), *cert. denied*, 523 U.S. 1108 (1998). Since Warren claims the right to early release under section 3621(e), or at least consideration for such release, we begin with a detailed review of that legislation and the BOP's regulations interpreting it.

Section 3621(e)(2)(B), effective September 13, 1994, allows prisoners convicted of "nonviolent" offenses who complete a DAP to apply for a sentence reduction of up to one year at the discretion of the BOP director. *See* 18 U.S.C. § 3621(e)(2)(b). The statute does not define a nonviolent offense. Effective May 25, 1995, the BOP promulgated regulation 550.58 that defined "nonviolent offense" by identifying as not eligible for early release those inmates whose current offense "is determined to be a crime of violence as defined in 18 U.S.C. § 924(c)(3)."[2] 28 C.F.R. § 550.58 (1995). Also effective May 25, 1995, the BOP issued Program Statement 5330.10 to outline the qualifications for early release under section 3621(e) and regulation 550.58; the language of the program statement essentially mirrors that in the regulation. *See* U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5330.10 (May 25, 1995).

_____

[2] Section 924(c)(3) defines a crime of violence as having "as an element the use, attempted use, or threatened use of physical force against the person or property of another," or as by its nature, involving "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(2000).

4

In July 1995, the BOP released Program Statement 5162.02, to elaborate the meaning of crime of violence in the context of section 3621. That version of the Program Statement listed 21 U.S.C. § 846, Warren's offense of conviction, as an offense that could be considered a crime of violence if the facts surrounding the offense demonstrate "substantial risk" that force could have been used during its commission. *See* U.S. Dept. of Justice, Bureau of Prisons Program Statement No. 5162.02 (July 24, 1995). This was the regulatory framework in place in February 1996 when the BOP first denied Warren consideration for early release under section 3621(e).

On April 23, 1996, the BOP clarified its interpretation of crime of violence in Change Notice CN-01 to Program Statement 5162.02. As an example of a prisoner ineligible for early release because of the commission of a crime of violence, the Change Notice described a defendant serving a sentence for drug conspiracy (21 U.S.C. § 846) that had been enhanced for possession of a firearm. *See* U.S. Dept of Justice, Change Notice CN-01 to Program Statement 5162.02 (April 23, 1996). By May 17, 1996, the BOP had modified 28 C.F.R § 550.58, explaining that "as an exercise of the discretion vested in the Director of the Federal Bureau of Prisons," several categories of prisoners would not be considered for early release. *See* 28 C.F.R. § 550.58 (1996). The regulation then defined as one such category, "inmates whose current offense is a felony . . . that involved the carrying, possession, or use of a firearm or other dangerous

5

weapon." *Id*. at (a)(1)(vi)(B). Though the BOP has made additional clarifications to regulation 550.58 since May 1996, those changes are not relevant to the present appeal.

## I.   Ex Post Facto Claim

Imposition of punishment more severe than that assigned when a criminal act occurred is a violation of the Constitution's prohibitions on ex post facto laws. *See* U.S. CONST. art. I, §9, cl. 3; *Collins v. Youngblood*, 497 U.S. 37, 42 (1990). In this regard, the Supreme Court has recognized that legislative modifications to early release provisions or parole standards may violate the prohibition on ex post facto legislation if applied retroactively. *See, e.g., Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 898, 137 L.Ed.2d 63 (1997)(finding violation of ex post facto principles when statute made entire class of prisoners ineligible for early release); *Weaver v. Graham*, 450 U.S. 24, 33-35 (1981). Invoking these cases, Warren argues that the BOP violated the ex post facto doctrine by retroactively applying its regulations to deny him (and others subject to a sentence enhancement for possession of a firearm) consideration for early release under section 3621(e).

For an ex post facto violation to occur, two elements must be present: (1) a law must be retrospective, that is, it must apply to events occurring before its enactment, and (2) the new law must create a sufficient risk of increasing the punishment attached to the defendant's crimes. *See California Dept. of Corrections v. Morales*, 514 U.S. 499, 509, 115 S.Ct. 1597, 131

6

L.Ed.2d 588 (1995); *Weaver*, 450 U.S. at 29. In evaluating an alleged violation of the ex post facto doctrine, the court must rigorously analyze the level of risk that an inmate's prison stay will be longer because of a change in the law that applies retroactively. *See Garner v. Jones*, 120 S.Ct. 1362, 1370 (2000); *see also Morales*, 514 U.S. at 506-07 ("[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some sort of 'disadvantage' . . . but on whether any such change . . . increases the penalty by which a crime is punishable."); *Lynce,* 519 U.S. at 444 (ex post facto analysis should focus on "the effect of the law on the inmate's sentence").

Warren's complaints stem solely from administrative actions of the BOP taken in accordance with the broad discretion that Congress granted that agency in section 3621. Section 3621(e) has not changed since Warren committed his offense in 1995; nor has Congress passed any additional legislation that affects Warren's eligibility for early release under section 3621. This court has previously suggested that the retroactive application of BOP regulations reflecting the agency's "reasonable exercise of properly delegated discretion" does not violate the ex post facto doctrine. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998). Yet we need not rely on *Wottlin* today, for Warren fails to specify an administrative regulatory change that placed him at risk of increased punishment.

Initially, we point out that Warren does not identify a single rule change or clarification that took place between the

time that he committed his offense in the summer/fall of 1995 and the point at which the BOP first denied him consideration for early release on February 8, 1996. Nevertheless, one response to Warren's administrative appeals did rely on the April 23, 1996 change notice to P.S. 5162.02 to justify Warren's ineligibility. Assuming that this modification applied to Warren retroactively, and that a BOP Program Statement is a "law" subject to ex post facto review,[3] we hold that the April 23, 1996 change did not place Warren at risk of increased punishment.

Indeed, the regulatory framework in effect from July 1995 to April 1996 listed Warren's offense - 21 U.S.C. § 846 - as potentially ineligible for early release consideration under section 3621(e) depending on the facts surrounding the commission of the offense. *See* U.S. Dept. of Justice, Program Statement 5330.10 (May 25, 1995); U.S. Dept. of Justice, Program Statement 5162.02 (July 24, 1995). Change Notice-01 to P.S. 5162.02 merely "clarified" the law in effect by listing as an example of inmates ineligible for early release under section 3621(e) those inmates serving sentences under 21 U.S.C. § 846 enhanced for possession of a weapon. Although Warren's case may not have been explicitly excluded under the Program Statements in effect in the fall of

---

[3] The Supreme Court has described the BOP's Program Statements as "internal agency guidelines" that, unlike BOP regulations, are not subject to "the rigors of the Administrative Procedure Act." *Reno v. Koray*, 515 U.S. 50, 61 (1995). We state no opinion as to whether such "internal agency guidelines," at least those passed by the BOP to guide the exercise of its discretion under section 3621, are "laws" that can produce sufficient risk of increased punishment to fail under ex post facto review.

1995, the BOP could have refused to consider him for early release in accordance with those guidelines. Merely clarifying that cases like Warren's should not be considered for early release under section 3621 is not a "change" that places Warren at risk of increased punishment. As a consequence, his claim that the BOP violated the ex post facto clause in denying him consideration for early release is not tenable.

## II. Whether the BOP Abused Its Discretion to Declare Him Ineligible for Early Release

Warren also argues that section 3621(e)(2)(B) mandates that he receive early release, or at least consideration for early release. Warren's argument takes two forms. First, relying on *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), Warren contends that the BOP abused its discretion under section 3621 by categorically denying him early release consideration after he completed the DAP program. Next, Warren argues that the BOP abused its discretion by relying on a sentence enhancement to determine that he had committed a crime of violence and thus was ineligible for early release consideration. Both of Warren's arguments are controlled by prior decisions of this court.

*Chevron* requires review of administrative regulations at two levels. First, we examine congressional intent. If congressional intent is not clear, we determine whether the agency's action is a permissible construction of the statute. *Chevron*, 467 U.S. at 842-43. In *Wottlin*, this court reviewed the BOP's interpretation of section 3621(e)(2)(B) under the *Chevron*

9

standard, finding that Congress intended to leave sentence reduction to the BOP's discretion and that the BOP could reasonably exclude whole categories of inmates from consideration. *See Wottlin*, 136 F.3d at 1035. Also, we have expressly recognized that section 3621(e)(2)(B) grants the BOP broad discretion to exclude from early release consideration prisoners serving sentences for drug conspiracy that were enhanced for possession of a dangerous weapon during the course of the conspiracy. *See Venegas*, 126 F.3d at 765 (exclusion of a prisoner from early release consideration because of a sentence enhancement for possession of a weapon "[w]as consistent with the letter and spirit of [BOP]'s authority as derived from section 3621(e)"). The combination of *Venegas* and *Wottlin* forecloses Warren's arguments regarding the BOP's discretionary power to deny him consideration for early release under section 3621(e).[4]

---

[4] Warren points to decisions from other circuits holding that the BOP's interpretation of section 3621 conflicts with unambiguous language in the statute requiring "conviction" of a violent crime, and thus constitutes an abuse of discretion. *See, e.g., Byrd v. Hasty*, 142 F.3d 1395, 1398 (11th Cir. 1998); *Downey v. Crabtree*, 100 F.3d 662, 668 (9th Cir. 1996). In evaluating the BOP's interpretation of "nonviolent" in section 3621, these circuits ignore the fact that section 3621 grants the BOP unfettered discretion to determine which "nonviolent" inmates it will consider for early release. As we noted in *Venegas*, nothing in section 3621 prevents the BOP from exercising that discretion categorically, electing not to consider for early release any prisoner whose sentence has been enhanced for possession of a dangerous weapon. *See Venegas*, 126 F.3d 163-64. At any rate, these contrary decisions on which Warren relies are not the law in this circuit. It is well established that one panel of this circuit may not overrule the prior decisions of another panel. *See, e.g., United States v. Taylor*, 933 F.2d 307, 319 (5th Cir. 1991).

## III. Warren's Procedural Due Process Claims

Realizing that his present inability to receive early release consideration flows from the sentence enhancement and the preliminary sentencing report on which that enhancement was based, Warren challenges the propriety of that report. Initially, he asserts that the BOP abused its discretion in relying on "false, inaccurate, and unreliable information." Warren also contends that the district court deprived him of procedural due process by failing to make de novo findings on specific issues during the habeas petition process. Neither argument has merit.

To the extent that Warren challenges the reasonableness of the BOP's reliance on information contained in preliminary sentencing reports to deny early release consideration, his claim is foreclosed by *Venegas* and our reasoning in the previous paragraph. *See Venegas*, 126 F.3d at 765. To the extent that Warren is challenging the factual correctness of the sentence enhancement, he has chosen the wrong mechanism for collateral attack. Section 2255 provides the primary means of collateral attack of a federal sentence. *See Cox v. Warden, Fed. Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990). Section 2241, on the other hand, is the proper habeas remedy for challenging the execution of a sentence. *See id.; United States v. Cleto*, 956 F.2d 83, 84 (5th Cir. 1992). Warren's section 2255 motion to vacate sentence has been heard and denied; he is not entitled to relitigate that issue under the heading of section 2241. *See*

11

*Solsona v. Warden, F.C.I.*, 821 F.2d 1129, 1132 (5th Cir. 1987);

*United States v. Flores*, 616 F.2d 840, 842 (5th Cir. 1980); *Lane*

*v. Hanberry*, 601 F.2d 805, 806 (5th Cir. 1979).

Warren also argues that the district court should have reviewed the entire record de novo and made findings of fact independent of those made by the magistrate in his report.  He contends that this failure deprived him of procedural due process.[5]  Because Warren objected to the findings of the magistrate judge's report in a timely fashion, the district court was required to perform a de novo review of the petition.  *See United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).  The district court specified in its final judgment that it had reviewed the entire record.  Absent evidence to the contrary, this court is compelled to believe that the district court performed this duty.  *See Lara v. Johnson*, 141 F.3d 239, 242 (5th Cir. 1998); *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993).  Warren seems to suggest that the absence of new factual findings is evidence that a de novo review was not conducted.  Yet, this court has held that new findings of fact are not necessary to demonstrate that de novo review took place.  *See Koetting*, 995 F.2d at 40.

---

[5] Warren also argues that the magistrate's report was untimely under 28 U.S.C. 636(b).  This argument is frivolous.  Section 636 does not impose any deadlines for filing Reports and Recommendations on habeas corpus petitions.  Moreover, this court has already reviewed the conduct of the magistrate when it dismissed Warren's application for a writ of mandamus without prejudice.

## CONCLUSION

Having reviewed Warren's claims and found no basis for overturning the BOP's decision to deny him consideration for early release under section 3621(e), we AFFIRM the decision of the district court.