## AMERICAN CIVIL RIGHTS UNION, Plaintiff,

v.

## Tax Assessor–Collector Cindy MARTINEZ–RIVERA, Defendant.

### Civil Action No. DR–14–CV–0026–AM/CW

United States District Court, W.D. Texas, Del Rio Division.

Signed 03/30/2015

## ORDER

ALIA MOSES, United States District Judge

Pending before the Court are the Defendant's Motion to Dismiss (Mot. to Dismiss, ECF No. 13) and the Plaintiffs Opposed Motion for Leave to File First Amended Complaint (Mot. to Amend, ECF No. 32). On March 6, 2015, the Honorable Collis White, United States Magistrate Judge, filed a Report and Recommendation (Report, ECF No. 34) in which he recommends that both motions be denied. The Defendant timely filed Objections (Objections, ECF No. 36) and the Plaintiff responded (Response, ECF No. 38). For the reasons stated below, this Report and Recommendation will be **ADOPTED.** Accordingly, the Defendant's Motion to Dismiss and the Plaintiff's Opposed Motion for Leave to File First Amended Complaint are **DENIED.**

## I. BACKGROUND

On March 27, 2014, Plaintiff American Civil Rights Union ("Plaintiff" or "ACRU") filed suit against Defendant Tax Assessor–Collector Cindy Martinez–Rivera ("Defendant") in her official capacity. (Complaint, ECF No. 1.) The Complaint alleges that the Defendant violated the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511,[1] by failing to make a rea-

---

1. The Complaint also briefly references the Help America Vote Act of 2002 ("HAVA"), codified at 52 U.S.C. § 21083. However, as Judge White notes in his Report, the Fifth Circuit has held that HAVA does not provide declaratory relief. *See Morales–Garza v. Lorenzo–Giguere,* 277 Fed.Appx. 444, 446 (5th

sonable effort to conduct voter list maintenance programs.[2]

ACRU is a nonprofit corporation, "which promotes election integrity, compliance with federal election laws, government transparency and constitutional government." (Complaint, ECF No. 1 at 2, para. 4.) Pursuant to this goal, ACRU filed the instant Complaint in its individual and corporate capacities, and on behalf of its members who are registered to vote in the State of Texas. (*Id.*) The Complaint names the Tax Assessor–Collector as defendant because, under ACRU's interpretation of the NVRA and Texas Election law, she is the official responsible for ensuring that Zavala County complies with the list-maintenance provisions of the NVRA. (*Id.* at 2–4, paras. 5–9.)

According to the Complaint, the voter rolls for Zavala County have more registered voters than there are citizens in the County who are eligible to vote. (*Id.* at 4, para. 10.) The Complaint supports this claim by comparing two figures: the number of Zavala County citizens eligible to vote in 2010—8,205 people—and the number of people actually registered to vote in Zavala County in March of 2014—8,623 people.[3] (*Id.*) The Plaintiff argues that these figures demonstrate an "implausible" registration rate of 105%. (*Id.*) According

to the Plaintiffs calculations, Zavala County has failed to maintain accurate voter rolls since at least 2008, when the County's registration rate was 102%. (*Id.* at 5, para. 10.)

The Plaintiffs efforts to improve Zavala County's registration rate began in September 2013, when ACRU sent the Zavala County Clerk a letter stating that the County's registration rolls have too many registered voters and requesting additional information. (*Id.* at 5–6, paras. 12–15.) Thereafter, the Plaintiff engaged in "numerous discussions" with the Defendant, and members of ACRU visited the Defendant's offices. (*Id.* at 6, para. 16.) When Zavala County's registration rate failed to improve, the Plaintiff brought suit, alleging that the Defendant's failure "to make a reasonable effort to conduct voter list maintenance programs in elections for federal office" violates Section 8[4] of the NVRA. (*See id.* at 8, paras. 24–28.) The Plaintiff contends that this violation has caused it harm by: (1) undermining the confidence that ACRU and its members, including those registered to vote in Texas, place in the integrity and legitimacy of the electoral process; (2) creating the risk of vote dilution; and (3) causing ACRU to engage in a months-long process to help bring Zavala County into compliance with

---

Cir.2008) ("HAVA does not itself create a private right of action." (citation omitted)). The Plaintiff has not objected to this recommendation and this Court finds that it is not in clear error. *See Douglas v. United Servs. Automobile Ass'n.*, 79 F.3d 1415, 1429 (5th Cir.1996); *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.1989). Therefore, this Order will only consider the Plaintiff's claims under the NVRA.

**2.** The Complaint also alleges that the Defendant failed to provide information in response to the Plaintiff's written requests and failed to produce records concerning the implementation of programs and activities to ensure the accuracy and currency of official lists of eligi-

ble voters for Zavala County, in violation of 52 U.S.C. § 20507(i). (Complaint, ECF No. 1 at 9, paras. 29–33.) On January 28, 2015, the parties stipulated to the dismissal of this count. (Stipulation, ECF No. 31.)

**3.** This figure includes 508 people who had been placed on the State's suspense list, as they are still eligible to vote. (Complaint, ECF No. 1 at 4 n.1.)

**4.** This Order refers to 52 U.S.C. § 20507 as "Section 8" of the NVRA, as the provision appeared under section 8 when the NVRA was enacted as a session law. National Voter Registration Act of 1993, Pub.L. No. 103–31, § 8, 107 Stat. 77 (1993).

the NVRA. (*Id.* at 5, para. 12; 6, para. 16; 8–9, paras. 26–27.) The Complaint seeks declaratory and injunctive relief as well as attorneys' fees and costs. (*Id.* at 9–10, paras. 1–4.)

On June 4, 2014, the Defendant filed the instant Motion to Dismiss, which presents two grounds for dismissing the Complaint. (Mot. to Dismiss, ECF No. 13.) First, the Defendant claims that the Complaint should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the Plaintiff can demonstrate neither organizational nor associational standing under Article III. (*Id.* at 6–10.) Second, the Defendant urges the Court to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) because: (1) ACRU did not fulfill the NVRA's notice requirement before filing suit and (2) the Complaint fails to allege specific acts by the Defendant that amount to a violation of the NVRA. (*Id.* at 10–11,12–15.) The Plaintiff filed a Response in Opposition. (Resp. to Mot., ECF No. 14.)

On February 18, 2015, the Plaintiff filed an Opposed Motion for Leave to File First Amended Complaint. (Mot. to Amend, ECF No. 32.) The Plaintiff sought to amend its original complaint in order to (1) add a member of ACRU who is registered to vote in Texas as a plaintiff and (2) conform the pleadings to a stipulation of dismissal of Count Two of the original complaint. (*Id.*)

On February 23, 2015, Judge White filed a Report and Recommendation that recommended denying both the Defendant's Motion to Dismiss and the Plaintiff's Motion to Amend the Complaint. (Report, ECF No. 34.) The Defendant timely filed Objections to the Report (Objections, ECF No. 36) to which the Plaintiff responded (Response, ECF No. 38).

## II. ANALYSIS

### A. Standard of Review

Where no party objects to a magistrate judge's report and recommendation, the Court need not conduct a de novo review. *See* 28 U.S.C. § 636(b)(1). In such cases, the Court need merely review the report and recommendation to ensure that it is neither clearly erroneous nor contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.1989). However, when a party objects to the findings or conclusions made in a report and recommendation, the Court is required to make a de novo determination of the portions of the report to which an objection was made. 28 U.S.C. § 636(b)(1). This review calls upon the Court to independently examine the record and assess the applicable law. The Court is not required to conduct a de novo review when the objections are frivolous, conclusive, or general in nature. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987). In the case at bar, Judge White's Report recommended that the Defendant's Motion to Dismiss be denied. The Defendant objected to five of the Report's conclusions: (1) ACRU established that it has organizational standing; (2) the Tax Assessor–Collector is the proper defendant; (3) ACRU may use United States census data to demonstrate that the Defendant violated the NVRA; (4) ACRU adequately stated a claim for relief under Federal Rule of Civil Procedure 12(b)(6); and (5) ACRU alleged sufficient notice, as required under the NVRA. (Objections, ECF No. 36.) The Court will review these conclusions de novo. However, neither party objected to the conclusion that ACRU does not have associational standing or the recommendation that the Plaintiff's Motion to for Leave to Amend the Complaint be denied. Therefore, the Court will review those portions of the

Report for clear error. Lastly, the Report provides a clear explanation of the NVRA and the pertinent portions of the Texas Election Code. (Report, ECF No. 34 at 797–98.) For the sake of brevity, that portion of the Report will not be reproduced in this Order, but incorporated into this Order by reference.

## B. Motion to Dismiss

### 1. Article III Standing

Constitutional standing is an issue of subject matter jurisdiction, *Cobb v. Cent. States, Sw. & Se. Areas Pension Fund*, 461 F.3d 632, 635 (5th Cir.2006), which must be resolved as a threshold matter because "when [jurisdiction] ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citation omitted).[5] As the party seeking to invoke federal jurisdiction, the plaintiff has the burden to demonstrate standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). At the pleading stage, a court looks to the complaint in which the plaintiff must make general factual allegations that indicate that standing is plausible. *Id.* ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" (citation omitted)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To determine whether the plaintiff has met this burden, the court may consider "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001) (citation omitted).

An organization can demonstrate standing in two ways: associational standing and organizational standing. In the instant case, ACRU alleged both associational and organizational standing.

An organization that establishes associational standing can bring suit on behalf of its members even in the absence of injury to itself. *Hunt v. Wash. St. Apple Adver. Comm'n*, 432 U.S. 333, 342, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). To do so, the organization must demonstrate that: (1) "its members would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose; and" (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 343, 97 S.Ct. 2434. Judge White's Report concluded that ACRU failed to demonstrate the first element because the injuries alleged in the complaint—undermined voter confidence and potential vote dilution—merely amount to generalized grievances about the government, which do not give rise to associational standing. (Report, ECF No. 34 at 803.) The Plaintiff did not object to this recommendation, so this Court reviews it for clear error. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir.1989). After carefully reviewing the record, the Court is of the opinion that ACRU lacks associational standing.

An organization, like an individual, can establish standing to sue on its own behalf by demonstrating three elements: (1) the organization suffered an injury in fact this is both "concrete and particular-

---

**5.** Courts should consider Rule 12(h)(1) jurisdictional issues before addressing other Rule 12 issues. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

ized, and actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the challenged action of the defendant;" and (3) it is likely, "as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130 (footnote, citations, and internal quotation marks omitted); *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982). The Defendant objected to the Report's conclusion that ACRU had sufficiently alleged all three elements.

■ The first element of constitutional standing requires a plaintiff to demonstrate a concrete and demonstrable injury. Therefore, allegations of injuries that merely amount to "generalized grievances about the conduct of Government," *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 217, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974), or "setback[s] to the organization's abstract social interests," *Havens Realty,* 455 U.S. at 379, 102 S.Ct. 1114, will not suffice.

■ An organization can demonstrate injury "by [alleging] that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activities—with the consequent drain on the organization's resources.'" *N.A.A.C.P. v. City of Kyle, Tex.,* 626 F.3d 233, 238 (5th Cir.2010) (quoting *Havens Realty,* 455 U.S. at 379, 102 S.Ct. 1114). At the pleading stage, an organization need only broadly allege such an injury. *Havens Realty,* 455 U.S. at 379, 102 S.Ct. 1114. For example, the Supreme Court in *Havens Realty* held that the plaintiff-organization had sufficiently alleged standing based upon a short description in the complaint: "Plaintiff HOME has been frustrated by defendants' racial steering practices in its efforts to assist equal access to housing through counseling and other referral services. Plaintiff HOME has had to devote significant resources to identify and counteract the defendant's *[sic]* racially discriminatory steering practices." *Id.* (alteration in original).

■ However, [n]ot every diversion of resources to counteract the defendant's conduct ... establishes an injury in fact." *City of Kyle,* 626 F.3d at 238. "[S]elf-inflicted injuries" cannot be used to establish standing because they are not fairly traceable to a defendant's conduct. *Ass'n of Comm. Orgs. for Reform Now ("ACORN") v. Fowler,* 178 F.3d 350, 358 (5th Cir.1999). Therefore, resources expended in pursuit of litigation, including those spent compiling statistical evidence, do not give rise to organizational standing. *Id.* at 358; *Ass'n for Retarded Citizens of Dall. v. Dall. Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trs.,* 19 F.3d 241, 244 (5th Cir.1994) ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization.") Moreover, "general allegations of activities related to monitoring the implementation of the NVRA" that are not paired with an allegation that such costs are fairly traceable to the defendant's conduct, fail to confer organizational standing. *Fowler,* 178 F.3d at 359.

■ The presence of a conflict between the defendant's conduct and the organization's mission is "necessary—though not alone sufficient—to establish standing;" importantly, an organization's claim to standing cannot rest on allegations of such a conflict alone. *See id.* at 361 (citation omitted); *see also Schlesinger,* 418 U.S. at 225–26, 94 S.Ct. 2925 ("[T]he essence of standing is not a question of motivation but of possession of the requisite interest

that is, or is threatened to be, injured by the unconstitutional conduct.").

In the present case, the Report finds that ACRU alleged three distinct injuries in the Complaint: (1) the Defendant's failure to remedy inaccurate voter rolls has undermined ACRU's and its members' confidence in the electoral system; (2) created the risk of vote dilution; and (3) the Defendant's continuing violation of the NVRA has caused ACRU to expend resources to compel compliance. (Report, ECF No. 34 at 798–99.) The Report concludes that the first two injuries, undermined voter confidence and the risk of vote dilution, are speculative and, as such, are more akin to a generalized grievance about the government than an injury in fact. (*Id.* at 802–03.) Neither party objected to this conclusion, and this Court finds that it is not clearly erroneous.

The source of the controversy is the Report's third conclusion: that ACRU sufficiently alleged an injury based upon diverted resources. (Report, ECF No. 34 at 800–01.) The Report's conclusion relies on the following facts set out in the Complaint: (1) ACRU sent Zavala County election officials a "statutory notice letter;" (2) ACRU and the Defendant conducted "numerous discussions over seven months" in an attempt to resolve the dispute; and (3) members of ACRU made "multiple visits" to the Defendant's offices. (Complaint, ECF No. 1 at 5, para. 13; 6, para. 16.) "These allegations," the Report concludes, "sufficiently allege that Plaintiff, in promoting its core mission, has faced roadblocks that have required it to expend substantial resources to counteract what it perceives are violations of the NVRA." (Report, ECF No. 34 at 800.)

The Defendant vigorously contests the Report's conclusion. Importantly, the Defendant does not refer to ACRU's activities in the language used in the Complaint and the Report: sending a notice letter,

conducting discussions, and visiting the Defendant's offices. Instead, the Defendant argues that ACRU's allegations of injury are based on: (1) monitoring Zavala County, (2) compiling statistics, and (3) conducting settlement discussions. (Objections, ECF No. 36 at 3, 4.) The Defendant proceeds to argue that monitoring costs do not demonstrate injury in fact under the Fifth Circuit's interpretation of injury in fact in *Fowler*. (*Id.*) Further, the Defendant characterizes compiling statistical evidence and conducting settlement discussions as litigation-related activities that also do not fulfill the injury in fact requirement under *Fowler*. (*Id.* at 3–4.) Finally, the Defendant argues that ACRU has not alleged an injury because it has not "conducted any on-the-ground activity in Zavala County apart from gearing up for and filing this" suit; namely, it has not identified any ineligible voters on Zavala County's registration rolls and sought their removal. (*Id.* at 5.)

ACRU filed a Reply, in which it argues that the Defendant's reliance on *Fowler* is misplaced because that case addressed organizational standing in the context of a motion for summary judgment. (Reply, ECF No. 38 at 3.) ACRU goes on to differentiate the discussions it conducted with the Defendant from litigation related activities by pointing to the Report's finding that the goal of these discussions was to bring Zavala County into compliance with the NVRA. (*Id.* at 4.) Further, ACRU argues that it is inappropriate to compare its activities to those of organizations that brought suit under Section 7 of the NVRA because organizations suing under Section 8 will have different organizational goals than those suing under Section 7. (*Id.* at 5.) Lastly, ACRU argues that it has properly alleged causation because it would not have conducted discussions with and visited the Defendant if the Defendant had

been properly maintaining the voter rolls. (*Id.* at 5–b.)

 The Court agrees with the Report; ACRU has sufficiently alleged injury in fact and causation. The Court first notes that this issue arose in the context of a motion to dismiss. At this stage in litigation, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Fowler,* 178 F.3d at 357 (alteration in original) (citation omitted). Here, ACRU alleged that it conducted discussions with the Defendant that spanned seven months. The Court will not presume, as the Defendant urges, that these were settlement discussions. While the Defendant remains free to present evidence that these discussions merely amount to "litigation costs" under *Fowler* on a motion for summary judgment, such an argument on a motion to dismiss is premature. Furthermore, the Court is unwilling to hold that an organization must conduct some "on-the-ground" activity as a prerequisite to bringing suit under the NVRA. Although the organization in *Fowler* established standing based on voter registration campaigns it had conducted, the *Fowler* court focused less on the nature of the effort than on the fact that the effort was targeted at areas in which the state had failed to implement the NVRA. *Id.* at 361. Like the organization in *Fowler,* ACRU has also targeted one area of Texas, Zavala County, that has allegedly failed to comply with the NVRA. In sum, the Court finds that ACRU's allegations that it conducted discussions with the Defendant and visited the Defendant's offices in an effort to bring Zavala County into compliance with the NVRA are sufficient to establish both injury in fact and causation. The Defendant's objections are overruled.

 The Defendant raised three objections to the Report's conclusion that the alleged injury is redressable by a favorable decision: (1) it is not appropriate to rely upon statistics from the United States Census Bureau to conclude that the Plaintiff alleged a redressable injury; (2) the alleged injury is not redressable because any injunction the Court could order would merely direct the Defendant to comply with the NVRA; and (3) a County Tax Assessor–Collector is not in a position to redress the alleged injury and therefore is not a proper party in an action brought pursuant to Section 8 of the NVRA.[6] (Objections, ECF No. 36 at 6 n.1, 9.) The Court will examine these objections in the order presented.

At this stage in the litigation, ACRU cannot point to any specific instances in which the Defendant or her predecessor violated the NVRA. (*See* Response, ECF No. 14 at 10–11.) Instead, the Complaint relies on a comparison between the number of citizens eligible to vote in Zavala County—gleaned from the 2010 Census— and the number of citizens who were actually registered to vote in the County at the time ACRU filed its Complaint.[7] (Complaint, ECF No. 1 at 5.) According to the Complaint, the latter number divided by the former yields an "implausible" registration rate of 105% and gives rise to the strong inference that the Defendant violat-

---

6. *See Scott v. Schedler,* 771 F.3d 831, 834 n. 5 (5th Cir.2014) (characterizing the Louisiana Secretary of State's argument that it is not a proper party to an NVRA suit because it lacks authority to enforce the NVRA as "part of the standing question related to redressability").

7. This figure includes both the people on Zavala County's voter registration rolls and those on the County's suspense list, who are still entitled to vote, as noted above in Footnote 3. (Complaint, ECF No. 1 at 4 n.1.)

ed Section 8 of the NVRA. (*Id.* at 4–5.) Judge White's Report found that Census data is reliable, took judicial notice of certain statistics from the United States Census Bureau, and concluded that a favorable decision that lowered the registration rate would redress ACRU's injury. (Report, ECF No. 34 at 801–02.) The Defendant objected to the Report's use of statistical data "to the extent that such data might be used as a factual finding in this litigation and to the extent such data is not in evidence." (Objections, ECF No. 36 at 9.)

 The Court agrees with the Report's conclusion that United States Census data is reliable and properly subject to judicial notice. A court "may take judicial notice at any stage of the proceeding." Fed.R.Evid. 201(d). A "court may judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). The Fifth Circuit has recognized that figures from the United States Census are properly subject to judicial notice. *Hollinger v. Home State Mur. Ins. Co.*, 654 F.3d 564, 571–72 (5th Cir.2011) ("United States census data is an appropriate and frequent subject of judicial notice." (citations omitted)); *accord, e.g., United States v. Bailey*, 97 F.3d 982, 985 (7th Cir.1996); *United States v. Esquivel*, 88 F.3d 722, 726–27 (9th Cir.1996). Moreover, by taking judicial notice of facts not subject to reasonable dispute, a Court does not convert a motion to dismiss into a motion for summary judgment. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir.2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." (citation omitted)). Therefore, the Defendant's objection to the use of Census data is overruled.

The Court also agrees with the Report's conclusion that the Plaintiff's injury would be redressed by a favorable decision. The Report found that "[t]he voting-age population of Zavala County in 2013 was approximately 8,448, yet there were 8,623 people registered to vote in 2014," yielding a registration rate of 102%. (Report, ECF No. 34 at 801.) The Report concluded that injunctive relief ordering the Defendant to properly maintain voter rolls would likely improve Zavala County's registration rate and allow ACRU to direct its resources elsewhere. (*Id.*) The Defendant objected to this conclusion, arguing that the Plaintiff failed to allege a violation of the NVRA that an injunction could correct. (Objections, ECF No. 36 at 6–7.) According to the Defendant, the NVRA does not require counties to attain a specific registration ratio and does not supply a cause of action for the failure to meet some yet-to-be-defined benchmark. (*Id.*) The Defendant misinterprets the Report's conclusion. The Report found that significantly high registration rates, like those in Zavala County, give rise to the inference that a county is not properly implementing a program to maintain an accurate and current voter registration roll, in violation of the NVRA. (Report, ECF No. 34 at 801–02.) The Report did not state that a high registration rate, alone, demonstrates such a violation. The Plaintiff is not required, at this stage of the litigation, to prove a redressable injury; it is enough to make the allegation. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. The Court finds the Plaintiff has done so. Accordingly, the Defendant's objection is overruled.

 The Court now proceeds to the Defendant's last objection, that the Plaintiff failed to sue the proper party: the Texas Secretary of State: As previously noted, the NVRA requires each state to "ensur[e] the maintenance of an accurate

and current voter registration roll for elections for Federal office" by, *inter alia,* "conduct[ing] a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" after a registrant dies or changes residence. 52 U.S.C. § 20507(a)(4), (b). "The NVRA centralizes [compliance] responsibility in the state and in the chief elections officer, who is the state's stand-in." *Scott v. Schedler,* 771 F.3d 831, 839 (5th Cir.2014). The chief elections officer is "responsible for coordination of State responsibilities under" the NVRA. 52 U.S.C. § 20509.

Under Texas law, the chief elections officer is the Secretary of State. Tex. Elec. Code Ann. § 31.001. The Secretary may assign "any function relating to the administration of elections that is under the Secretary's jurisdiction" to the staff in the elections division, and must assist and advise these election authorities on the application, operation, and interpretation of the election laws. *Id.* §§ 31.001, 31.004. However, the Secretary is ultimately responsible for maintaining "uniformity in the application, operation, and interpretation" of the election laws. *Id.* § 31.003. If the Secretary determines that the actions of an election authority are impeding the "free exercise of a citizen's voting rights," the Secretary may order the authority to correct the offending conduct and, if that fails, seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus. *Id.* § 31.005.

Among these election authorities are the county tax assessor-collectors, who act as voter registrars for each county. *Id.* § 12.001. The registrar's duties include maintaining a suspense list of voters, *Id.* § 15.081, and correcting the voter registration records, "including, if necessary, deleting a voter's name from the suspense list," *Id.* § 15.022(a). Under the NVRA, the voter registrar has the additional duty

of "correct[ing] an official list of eligible voters in elections for Federal office in accordance with change of residence information." *Id.* § 20507(d)(3). By fulfilling these duties, the county tax assessor-collectors enable the Texas Secretary of State to maintain accurate and current voter registration rolls, as mandated by the NVRA. *See* 52 U.S.C. § 20507.

■ In the present case, ACRU brought suit against the Zavala County Tax Assessor–Collector for "failing to implement a program" to reduce the number of ineligible voters on the county's registration rolls, in violation of NVRA Section 8. (Complaint, ECF No. 1 at 5.) However, ACRU neglected to join the Texas Secretary of State as a defendant. The Defendant argues that this failure warrants dismissal of the Complaint because, under the NVRA, she does not have the authority to implement a program to remove ineligible voters from the rolls. (Objections, ECF No. 36 at 6, n.1.) In its Response, ACRU argues that the NVRA does impose the duty on voter registrars to use data from the United States Postal Service to update voter rolls. (Response, ECF No. 38 at 13.) Additionally, ACRU notes that Texas election law imposes a host of other duties on county voter registrars. (*Id.* at 14.)

■ As the chief elections officer, the Texas Secretary of State has the power to enforce the NVRA and the "ongoing role" of remedying NVRA violations. *Scott,* 771 F.3d at 839. In the *Scott* case, that curiously both parties failed to cite, the Fifth Circuit held that the Texas Secretary of State is a proper party to an NVRA suit. *See id.* at 833 (holding that the NVRA "gives the Secretary of State enforcement authority" and imposes the "obligation to require ... state agencies to comply with" the Act). Indeed, *Scott* highlights the role the Secretary of State plays in ensuring the state complies with the NVRA, al-

though it also notes that the obligation is to cause the State agents comply with the Act.[8] *Id.* at 833, 839. However, the *Scott* court did not say that the Secretary of State is a necessary party to an NVRA suit. The NVRA itself is also silent on the subject of necessary parties. *See* 52 U.S.C. § 20510(b). In the absence of a holding to the contrary, this Court is unwilling to dismiss the instant Complaint on standing grounds for failure to join the Secretary of State. As previously noted, the Tax Assessor–Collector has certain obligations under the NVRA as the designated voter registrar and state official. If the Defendant has failed to meet her obligations, ACRU can bring a civil suit against her. The Defendant's objection is overruled.

### 2. Failure to State a Claim

■ The Defendant also moved to dismiss the Complaint for failure to state a claim, under Rule 12(b)(6). The Defendant argues again that high registration rates do not demonstrate an NVRA violation; in essence, that the facts in the Complaint do not plausibly demonstrate that ACRU is entitled to relief. (Mot. to Dis., ECF No. 13 at 12–15.) Judge White's Report concludes that the following allegations, contained in the Complaint, sufficiently plead a cause of action: (1) Texas election law and the NVRA impose upon the Defendant the duty to maintain accurate and current registration rolls; (2) voter rolls maintained by the Defendant contain more voters registered to vote than there are citizens eligible to vote; (3) an implausible 105% registration rate gives rise to the strong inference that the Defendant failed to conduct a reasonable voter list maintenance program; and (4) ACRU's members are injured because of the resulting risk of voter fraud and vote dilution. (Report, ECF No. 34 at 805.)

The Defendant objected, arguing that a high registration rate might be consistent with illegal conduct, but it is equally consistent with a "wide swath" of legal conduct. (Objections, ECF No. 36 at 9–10); *see Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

The Court is unconvinced by the Defendant's objection. Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that "[fails] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Because motions to dismiss are "viewed with disfavor and ... rarely granted," *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982) (internal quotations omitted), a court must liberally construe a complaint in the plaintiff's favor, draw all inferences in favor of the plaintiff's claims, and take as true all factual allegations contained in the complaint. *See Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir.1986). A complaint will survive a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Report concludes, and this Court agrees, that the Plaintiff alleged a plausible claim for relief. The high registration rate in Zavala County creates a strong inference that the Defendant has neglected her duty to maintain an accurate and current voter registration roll. The Defendant's argument that registration rates ex-

---

8. Counties and their officials are state officials.

ceeding 100% could be the result of the County having a "reasonable purge system but an excellent registration system" or an "imperfect" purge system hampered by flawed data provided by the United States Postal Service is unconvincing. (Objections, ECF No. 36 at 10.) While these factors may certainly contribute to an inflated registration rate, it is more likely that the Defendant's failure to maintain the voter rolls caused the registration rate to climb. The Court agrees with the Report that this "strong inference of a violation of the NVRA" is adequate to survive a motion to dismiss under Rule 12(b)(6). The Defendant's objection is overruled.

### 3. Notice

■■■ Lastly, the Defendant objects to the Report's conclusion that the Plaintiff complied with the NVRA's notice requirement. (Objections, ECF No. 36 at 10–11.) The NVRA requires [9] potential plaintiffs to "provide written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b)(1). "If the violation is not corrected within 90 days after receipt of a notice" the aggrieved person may file a civil suit. 52 U.S.C. § 20510(b)(2). The Report noted the lack of case law in the Fifth Circuit interpreting the notice provision, but found that the "language and legislative history of the NVRA 'indicate that Congress structured

the notice requirement in such a way that notice should provide states in violation of the Act an opportunity to attempt compliance before facing litigation." (Report, ECF No. 34 at 806); *Ass'n of Community Orgs. for Reform Now ("ACORN") v. Miller*, 129 F.3d 833, 838 (6th Cir.1997); *see also Schedler*, 771 F.3d at 836 (citing *Miller* favorably).

■■■ To determine whether a party has provided adequate notice, a Court is not limited to the complaint alone, but may look to documents incorporated into the complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (citation omitted)). The document in question, a letter from ACRU to the Defendant, is attached to the Defendant's Answer (Answer, ECF No. 12 Exhibit 1) and was filed simultaneously with the Motion to Dismiss. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000) (noting a court may consider documents attached to a motion to dismiss).

ACRU sent the letter to the Zavala County Clerk[10] stating that the County

---

**9.** Although the language in the NVRA suggests that notice is not mandatory, "[a] person who is aggrieved by a violation of this chapter *may* provide written notice of the violation," 52 U.S.C. § 20510(b)(1), the Fifth Circuit has held that notice is mandatory. *Scott v. Schedler*, 771 F.3d 831, 835 (5th Cir. 2014). The NVRA notice provision is nonjurisdictional. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 976–77 (9th Cir.2012). Therefore, when a plaintiff fails to fulfill the notice provision the complaint should be dismissed pursuant to Rule 12(b)(6), not Rule 12(b)(1). *See Harold H.*

*Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir.2011).

**10.** Although the Plaintiff attempts to take credit for communication sent by third parties to the Defendant as early as 2012, it appears from the Complaint that the September 12, 2013 letter represents the first contact between the Plaintiff and the Defendant. (Complaint, ECF No. 1 at 5.) Therefore, the Court disregards the earlier communication. *See Scott*, 771 F.3d at 836 (holding that one plaintiff who failed to give the defendant notice could not "piggyback" on the notice given by a second plaintiff in the same case).

was "in apparent violation of Section 8 of the National Voter Registration Act." (Letter, ECF No. 12–1.) The letter went on to paraphrase and cite the provision of Section 8 that the Defendant was allegedly violating: "election officials [must] conduct a reasonable effort to maintain voter registration lists free of dead voters, ineligible voters and voters who have moved away." (*Id.*) The letter set out the evidence concerning the violation: Zavala County "has significantly more voters on the registration rolls than it has eligible live voters." (*Id.*) The letter urged the recipient to work toward full compliance with the NVRA, warning that the failure to do so could result in a lawsuit and citing the provision of the NVRA that allows a private party to bring suit. (*Id.*) Furthermore, it stated "[t]his letter serves as the statutory notice to your county." (*Id.*)

The Defendant maintains that ACRU's letter was too vague to provide notice of an NVRA violation because the "circumstance"—voter rolls containing more names than there are citizens eligible to vote—is not an NVRA violation. (Objections, ECF No. 36 at 11.) This argument is misplaced. The letter does not claim that a high registration rate is, in itself, a violation. Instead, it indicates that having too many registered voters on county registration rolls is *evidence* that the County has violated Section 8 of the NVRA. The letter gives the Defendant enough information to diagnose the problem. At that point it was the Defendant's responsibility to attempt to cure the violation. Accordingly, the Defendant's objection that notice was inadequate is overruled.

## C. Motion to Amend Complaint

The Plaintiff moved to amend the Complaint, seeking to add an additional plaintiff and to remove Count 2. (Mot. to Amend, ECF No. 32.) The Report recommended that the motion be denied for several reasons. (Report, ECF No. 34 at 807–08.) First, it is not necessary to amend a complaint after the parties stipulate to the dismissal of one of the counts. (*Id.* at 807.) Second, the additional plaintiff did not provide the requisite notice to bring suit under the NVRA, and would be subject to immediate dismissal if she were joined as a plaintiff. (*Id.*) Third, the additional plaintiff does not have Article III standing to bring a claim because she did not sufficiently allege an injury in fact. (*Id.*) Neither party objected to the Report's recommendation and this Court does not find that it is erroneous. The Plaintiff's Motion to Amend is denied.

## III. CONCLUSION

For the above reasons, the Court **ADOPTS** the Report and Recommendation prepared by Judge White. (ECF No. 34.) Accordingly, it is **ORDERED** that the Defendant's Motion to Dismiss (ECF No. 13) is **DENIED** and the Plaintiff's Opposed Motion for Leave to File First Amended Complaint (ECF No. 32) is **DENIED**.

## *REPORT AND RECOMMENDATION*

### COLLIS WHITE, UNITED STATES MAGISTRATE JUDGE

To the Honorable Alia Moses, United States District Judge:

Pending before the Court is Defendant's Motion to Dismiss. ECF No. 13. Defendant Tax Assessor–Collector Cindy Martinez–Rivera filed the motion, urging the Court to dismiss claims against her in her official capacity under the National Voter Registration Act, based on a lack of standing, lack of notice, and failure to state a claim. Also pending is Plaintiff's Opposed Motion for Leave to File First Amended Complaint. ECF No. 32. The motions were referred to the undersigned pursuant to 28 U.S.C. § 636 for disposition. After reviewing the motions and the applicable law, the undersigned **RECOMMENDS**

that the motions be **DENIED** for the following reasons.

## I. BACKGROUND

On March 27, 2014, Plaintiff American Civil Rights Union ("Plaintiff" or "ACRU") filed suit against Defendant Tax Assessor–Collector Cindy Martinez–Rivera ("Defendant") in her official capacity, alleging violations of the National Voter Registration Act ("NVRA"), 52 U.S.C. §§ 20501–20511, formerly 42 U.S.C. § 1973gg *et. seq.*[1] Under Texas law, Defendant, as tax assessor-collector, is the designated county registrar of voters in Zavala County responsible for ensuring compliance with the NVRA. ACRU is a nonprofit corporation that promotes election integrity, compliance with federal election laws, government transparency, and a constitutional government. ACRU filed suit in its individual and corporate capacities, and on behalf of its members and supporters who are registered to vote in the State of Texas.

According to the complaint, Zavala County's voter rolls have more people registered to vote than there are citizens who are eligible to vote. For example, at the time the lawsuit was filed, there were 8,623 people registered to vote in Zavala County when, according to the 2010 United States census, only 8,205 age-eligible citizens lived in Zavala County, representing an "implausible" registration rate of 105 %. Although 508 of those citizens were placed on the State's suspense list and faced eventual removal from the voter rolls, they were still entitled to vote. Despite talks with Defendant and her predecessor over the past several years, numbers have not improved and in fact have worsened.

Because of the implausible voter registration rates, Plaintiff asserts that Defendant, in her official capacity as tax assessor-collector, has failed to implement a program to properly maintain a voter registration list for elections for federal office, in violation of 52 U.S.C. § 20507(a)(4), which dictates that a State shall "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of—(A) the death of the registrant; or (B) a change in the residence of the registrant...."[2] According to Plaintiff, Defendant's continued failures to comply with the NVRA have caused it to expend months of effort to try to get Defendant to comply with the NVRA. Plaintiff also contends that Defendant's failures have undermined the confidence of ACRU and its members—who include those properly registered to vote in Texas—in the integrity of the voter registration rolls and in the integrity of elections held across Texas. In addition, Plaintiff asserts that these failures create a possibility of vote dilution for its members. Accordingly, Plaintiff seeks declaratory and injunctive relief and an award of attorney's fees and costs.[3]

1. Since the time Plaintiff filed suit, the NVRA was transferred from Chapter 42 of the United States Code, *The Public Health and Welfare*, to Chapter 52, *Voting and Election*. Although the parties' briefings refer to Chapter 42, the undersigned will hereinafter refer to the current statutory designations.

2. Plaintiff also alleges that Defendant failed to provide responses to Plaintiff's written request for data and failed to permit inspection of Defendant's records of any programs and activities implemented to ensure the accuracy and currency of official lists of eligible voters in Zavala County, in violation of 52 U.S.C. § 20507(i). However, the parties stipulated to the dismissal of this count on January 28, 2015.

3. Plaintiff briefly references 42 U.S.C. § 15483, a part of the Help America Vote Act of 2002 ("HAVA"), now codified at 52 U.S.C. § 21083, which governs computerized statewide voter registration list requirements. The

On June 4, 2014, Defendant filed the present motion to dismiss. In the motion, Defendant contends that ACRU has no organizational or associational Article III standing to file suit over general list maintenance procedures and asks that the Court dismiss the complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[4] Defendant also argues that standing is lacking because the complaint fails to specify any actual member of ACRU who has been injured. Defendant further argues that the claims should be dismissed for failure to state a claim under Rule 12(b)(6) because (1) ACRU did not give proper notice of a specific violation of the NVRA before filing suit, and (2) the complaint speaks only in terms of conjecture.[5]

On February 18, 2015, Plaintiff filed a motion to amend its complaint. According to Plaintiff, the amended complaint will in essence (1) conform the pleadings to reflect a stipulation of dismissal of Count Two of the original complaint, and (2) add as a plaintiff Jan LaRue, a member of ACRU who is a registered voter in Texas.

## II. THE NATIONAL VOTER REGISTRATION ACT OF 1993

The NVRA was enacted by Congress in 1993 and "sets forth requirements with respect to the states' administration of the voter registration process." *Association of Community Organizations for Reform Now v. Fowler,* 178 F.3d 350, 354 (5th Cir.1999). The NVRA's purpose is:

(1) to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office;

(2) to make it possible for Federal, State, and local governments to implement [national voter registration] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office;

(3) to protect the integrity of the electoral process; and

(4) to ensure that accurate and current voter registration rolls are maintained.

52 U.S.C. § 20501(b).

In order to strike a balance between facilitating voter registration and ensuring accurate voter registration rolls, § 20507(a)(4) requires a State to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reasons of—(A) the death of the registrant; or (B) a change in the residence of the registrant...." Such a program "shall be uniform, nondiscriminatory, in compliance with the Voting Rights Act of 1965" and "shall not result in the removal of the name of any person from the official list of voters registered to vote in

Fifth Circuit, however, has held that HAVA does not provide declaratory relief. *See Morales–Garza v. Lorenzo–Giguere,* 277 Fed.Appx. 444, 446 (5th Cir.2008) (citing *Sandusky Cnty. Democratic Party v. Blackwell,* 387 F.3d 565, 572 (6th Cir.2004) ("HAVA does not itself create a private right of action.")). Notwithstanding, Plaintiff only conclusively alleges a violation of § 21083.

4. Defendant actually refers to constitutional standing when apparently meaning only organizational standing, and refers to organizational standing when referring to associational or representational standing. Constitutional standing, as opposed to statutory or prudential standing, encompasses both organizational and associational standing. *See N.A.A.C.P. v. City of Kyle,* 626 F.3d 233, 237 (5th Cir.2010). The undersigned hereinafter refers to each type of standing by its proper name.

5. The motion also raises arguments about the sufficiency of Count 2, which are now moot.

an election for Federal office by reason of the person's failure to vote" unless certain procedures are first performed. § 20507(b)(1)–(2). A State must also "complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." § 20507(c)(2)(A).

To ensure compliance with the NVRA, the Act dictates that each State "shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities...." 52 U.S.C. § 20509. Texas has designated the county tax assessor-collector as the voter registrar for each county. Tex. Elec. Code § 12.001. The registrar is responsible for maintaining a suspense list of voters, which includes the name of each voter: (1) who fails to respond to the registrar's notice that confirms the voter's current residence; (2) whose renewal certificate is returned to the registrar as undeliverable; or "(3) who appears on the list of nonresidents of the county provided to the registrar under Section 62.114, Government Code." Tex. Elec. Code § 15.081. The registrar is also responsible for making appropriate corrections in the voter registration records, "including, if necessary, deleting a voter's name from the suspense list...." Tex. Elec. Code § 15.022(a).

When States fall short of their responsibilities, the NVRA allows the Attorney General to bring a civil action "for such declaratory or injunctive relief as is necessary to carry out this chapter." § 20510(a). In addition, the NVRA creates a private right of action for declaratory or injunctive relief by a "person who is aggrieved by a

violation" of the Act if a violation of the NVRA is not corrected within a certain period of time after notice of the violation is received. § 20510(b). Section 20510(c) also permits the recovery of attorney's fees and costs for the prevailing party.

## III. ANALYSIS

### A. Motion to Dismiss

#### 1. Standing

The first issue the Court must address is whether Plaintiff has standing to file suit against Defendant under the NVRA.[6] Because standing is an essential part of Article III of the Constitution's requirement that there be a case or controversy for a suit to be justiciable, see *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), a claim is properly dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction when a party lacks constitutional standing to bring a claim, see *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n. 2 (5th Cir.2011).

The plaintiff, as the party asserting jurisdiction, bears the burden of demonstrating that subject-matter jurisdiction exists. *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 714 (5th Cir.2012). "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

The constitutional minimum of standing contains three elements: (1) "the plaintiff

---

6. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).

must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130 (internal quotations, citations, and alterations omitted).

Since the three elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561, 112 S.Ct. 2130. Thus, at the pleading stage, a complaint must contain general factual allegations to indicate that standing is plausible. *See id.*; *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

According to the complaint, ACRU and its members have suffered harm because: (1) Defendant's practices have undermined their confidence in the electoral system; (2) failure to maintain the voter lists could result in vote dilution from illegally cast votes; and (3) Defendant's continuing violation of the NVRA has caused ACRU to expend resources to compel compliance. Defendant, however, argues that undermined confidence is too intellectual of a concept to establish any demonstrable injury, and the possibility of vote dilution is too speculative. Defendant also argues that Plaintiffs claim is not specific enough to demonstrate that any relief would be redressable. Finally, Defendant argues that because Plaintiff has failed to name any specific member who has been harmed, standing is lacking.

The undersigned finds that Defendant has sufficiently demonstrated standing at the pleading stage. Defendant primarily attacks ACRU's associational standing, not organizational standing. Although the undersigned agrees that Plaintiff lacks associational standing, the undersigned ultimately concludes that Plaintiff has organizational standing, as explained below. Because any form of standing is sufficient for the case to proceed, Defendant's motion to dismiss for lack of standing should be denied. *See Crawford v. Marion Cnty. Elec. Bd.,* 472 F.3d 949, 951 (7th Cir.2007), *aff'd,* 553 U.S. 181, 189 n. 7, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (holding that when only injunctive relief is sought, only one plaintiff with standing is required).

### a. Organizational Standing

An organization has standing to sue on its own behalf if it meets the same standing test that applies to individuals—that is, if the plaintiff has suffered a redressable injury in fact that is fairly traceable to the actions of the defendant. *Fowler,* 178 F.3d at 356. In other words, "[h]as the plaintiff alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction?" *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (internal quotations omitted).

Defendant's arguments for dismissal focus solely on allegations of undermined confidence and vote dilution. This approach, however, neglects important instructional case law. Under *Havens,* "an organization may establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct; hence, the defendant's conduct significantly and 'perceptibly impaired' the organization's ability to provide its 'activi-

ties—with the consequent drain on the organization's resources . . . ' " *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 238 (5th Cir.2010) (quoting *Havens*, 455 U.S. at 379, 102 S.Ct. 1114; *see also Fowler*, 178 F.3d at 360 ("[A]n organization has standing to sue on its own behalf where it devotes resources to counteract a defendant's allegedly unlawful practices.").

A showing that an organization's mission is in direct conflict with a defendant's conduct, alone, is insufficient to confer standing, as is compiling statistical evidence, monitoring a State's activities, and redirecting resources to litigation in response to actions or inactions of another party. *See Fowler*, 178 F.3d at 358–59. These are simply setbacks "to the organization's abstract social interests." *Havens*, 455 U.S. at 379, 102 S.Ct. 1114. Instead, injury in fact must be caused by an action of the State that an organization now claims is illegal, "as opposed to part of the normal, day-to-day operations of the group." *Fowler*, 178 F.3d at 359. "[U]nless it [is] clear that an organization's stated goals [are] 'at loggerheads' with a defendant's conduct, 'it is entirely speculative whether the defendant's conduct is impeding the organization's activities.' " *Fowler*, 178 F.3d at 361 (quoting *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1429–30 (D.C.Cir.1996)).

Plaintiffs complaint alleges, in addition to undermined confidence and vote dilution, that it has expended significant resources in combating Defendant's failures to follow the NVRA. According to ACRU, its core mission is to foster compliance with federal election laws, promote election integrity, and ensure that only eligible voters may participate in American elections so as to prevent dilution of legitimate votes by illegal votes. In fulfilling its core mis-

sion, ACRU has closely monitored the goings-on in Zavala County and has compiled statistics to determine whether Zavala County is in violation of the NVRA. But in addition to this, the complaint states that for months, Plaintiff conducted discussions with Defendant in an effort to obtain compliance with the NVRA, including multiple visits to Defendant's offices and numerous discussions before filing suit. Notwithstanding ACRU's efforts, problems have persisted.

These allegations sufficiently allege that Plaintiff, in promoting its core mission, has faced roadblocks that have required it to expend substantial resources to counteract what it perceives are violations of the NVRA. Working for months to ensure that effective list maintenance programs are in place constitutes more than a mere setback to ACRU's abstract social interests.

There is also a causal connection between the injury and the complained-of conduct. Defendant Cindy Martinez–Rivera, as the tax assessor-collector, acts as the voter registrar under Texas law. It is her duty to maintain accurate voter registration lists in Zavala County. Thus, any shortcomings are her responsibility, as she is the one with the power to follow Texas law and make timely corrections to voter lists.

Finally, Plaintiff's injury would be redressable. In fully addressing this point, it is useful to jump to Defendant's arguments as to why Plaintiff has failed to state a claim under Rule 12(b)(6). According to Defendant, Plaintiff s claim fails to make any specific allegations as to how Defendant has actually failed to maintain voter lists and is merely using Zavala County as a test case by dividing mismatched census data points and concluding that Defendant has violated the NVRA.[7]

---

7. Plaintiff compares 2010 census rates with voter registration rates at the time suit was filed.

Defendant, in fact, argues that a registration rate of around 100% is expected under the NVRA because of the suspense list and the care a county must take before removing a person from the voter roll. Essentially, what Defendant implies is that because Defendant is already following the law, any declaratory or injunctive relief that the Court might grant would be non-specific, arbitrary, and incapable of redressing any concrete injury.

Census data is indeed reliable—even if not perfectly matched—and is often judicially noticed by courts.[8] It is also especially relevant here to demonstrate how strong of an inference there is that Defendant has violated the NVRA, where Plaintiff is yet incapable of alleging the specific shortcomings of Defendant.

At this point in the litigation, there are more up-to-date statistics from the United States Census Bureau that are more evenly matched. In 2012, for example, a presidential election year where historically more people are registered to vote than in non-presidential election years, only 66.9% of Texans were registered to vote.[9] This number includes those on a suspense list, as they are still technically registered to vote. Voting statistics also show that Hispanics and those with limited education are significantly less likely to be registered to vote.[10] And in Zavala County, 92.9% of the 2013 population was Hispanic or Latino, and only 9.4% of people twenty-five and older had a bachelor's degree or higher.[11] Thus, the expected voter registration rate for Zavala County should be significantly below the 2012 Texas average of 66.9 %.

The voting-age population of Zavala County in 2013 was approximately 8,448, yet there were 8,623 people registered to vote in 2014.[12] This amounts to a registration rate of approximately 102%. Although slightly less than the rate claimed by ACRU, a 102% registration rate is still markedly high. To put the numbers in perspective, assuming a generous 66.9% expected registration rate, 5,652 people should be registered to vote, or 2,971 people less than the number of people actually registered to vote.[13]

Should the Court grant injunctive relief and order proper maintenance of voter rolls, numbers would likely improve. A feasible 3,000 improperly registered voters is a significant number and allows for plen-

---

8. At any stage of the proceeding, the Court can sua sponte take judicial notice of facts that are not subject to reasonable dispute. *See* Fed.R.Evid. 201; *Hollinger v. Home State Mut. Ins. Co.,* 654 F.3d 564, 571–72 (5th Cir.2011) ("United States census data is an appropriate and frequent subject of judicial notice."); *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017–18 (5th Cir.1996) (taking judicial notice of the contents of documents filed with the SEC when ruling on a motion to dismiss). The undersigned is not using these facts for anything other than showing the existence of figures that would tend to support standing, and, as discussed below, a claim for relief.

9. *See* http://thedataweb.rm.census.gov/The DataWeb_HotReport2/voting/voting.hrml? GESTFIPS=45&INSTANCE=Nov+2012 (last visited February 18, 2015).

10. *See id.*

11. *See* http://quickfacts.census.gov/qfd/states/ 48/48507.html (last visited February 18, 2015).

12. *See id.; see also* Pl.'s Compl. at 4. The undersigned also notes that the census indicates that Zavala County's population growth was 4.1% between 2010 and 2013. *See http:// quickfacts.census.gov/qfd/states/48/48507.html.* Thus, the expected population growth for a period of one year would likely be slight, allowing the Court to accurately compare figures from 2012 and 2013.

13. This figure would include those on a suspense list, as they are still eligible to vote.

ty of room for improvement under the NVRA. Certainly at this stage of the litigation, the Court is unable to say specifically what proper list maintenance would entail. But after discovery, if there is indeed a violation, the specifics will become apparent. At that point, ACRU will be able to carry out its core mission elsewhere.

### b. Associational Standing

Although unnecessary to discuss, the undersigned agrees that Plaintiff lacks associational standing. An organization has associational standing to bring suit on behalf of its members when: (1) one or more of the organization's members "would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. St. Apple Adver. Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). When the relief sought is injunctive, individual participation of the organization's members is not normally necessary. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,* 517 U.S. 544, 546, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).

Voter fraud and vote dilution are unquestionably tangible concerns of the NVRA. *See, e.g., Gonzalez v. Arizona,* 677 F.3d 383, 403 (9th Cir.2012) ("As is evidenced by one of the four articulated purposes of the NVRA, which is 'to protect the integrity of the electoral process,' ... Congress was well aware of the problem of voter fraud when it passed the act and provided for numerous fraud protections in the NVRA.")/[14] And, as put by the Supreme Court,

Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised.

*Purcell v. Gonzalez,* 549 U.S. 1, 4, 127 S.Ct. 5, 166 L.Ed.2d 1 (2006).

The problem here, though, is that any injury to ACRU's members is entirely too speculative. The undersigned notes that there is little legal guidance on this issue from NVRA litigation, which generally only addresses voting rights that have been directly impaired, rather than situations here where the members still have full voting rights. *But Daughtrey v. Carter,* 584 F.2d 1050 (D.C.Cir.1978), a non-NVRA case, is essentially on point. In *Daughtrey,* the court addressed whether military personnel had standing to contest a presidential proclamation that granted pardons for violations of the Selective Service Act. Essentially, disenfranchised draft dodgers could return to the United States without facing criminal prosecution and have their voting rights fully restored. The plaintiffs, who resided all around the United States, argued that the potential votes of these pardoned people, who the plaintiffs claim should not be permitted to vote, would result in dilution of the plaintiffs' votes.

The court found that the plaintiffs failed to present a " 'discrete factual context' within which 'concrete injury' occurred," based on the fact that the plaintiffs did not tie vote dilution to any particular election, any particular geographical area, or any identifiable group of voters. 584 F.2d at

---

14. *But see True the Vote v. Hosemann,* 43 F.Supp.3d 693, 722 (S.D.Miss.2014) ("The NVRA was not designed as a tool to root out voter fraud, 'cross-over voting,' or any other illegal or allegedly illegal activity associated with casting a ballot on election day.").

1056 (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 220–22, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)). In addition, the court found "the dilution of voting rights they have alleged is so diffuse, minute, and indeterminable that we must conclude the injury asserted is too speculative to support standing under the circumstances presented here." *Id.* at 1056–57 (internal quotations omitted).

The facts in *Daughtrey* are no doubt distinct from the facts here, where some of ACRU's members purportedly are registered to vote in Texas and specifically complain of potential voting problems in Zavala County. But similar to *Daughtrey*, the complaint here does not complain of any specific voting practices—only poten-

tially unlawful voting practices. It is uncertain how many, if any, ineligible voters will actually vote, and historically, at least in Texas, there is little indication that many will.[15] Thus, any injury would be entirely speculative.

Under these facts, complaints of undermined confidence and potential vote dilution are nothing but a generalized grievance about government, complaining that an official should be required to follow the law.[16] Certainly, all citizens in general want to participate in an electoral system where only lawfully cast ballots count.[17] The Supreme Court, however, has "consistently held that a plaintiff claiming only a generally available grievance about government, unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573, 112 S.Ct. 2130.[18]

**15.** Certainly there is a potential for voter fraud, *see Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 195–96, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (recognizing that "not only is the risk of voter fraud real but that it could affect the outcome of a close election"), but according to the Texas Attorney General's Office, from 2004 to 2012, only 66 individuals were criminally prosecuted in Texas for voter fraud. In pertinent part, 11 of those cases resulted in dismissals or acquittals of charges; 33 involved mail-in ballot violations; 8 involved ineligible felon votes; 3 involved voter impersonation; 2 involved people registered to vote in the wrong precinct; and 1 involved recruiting noncitizens to vote. *See* Wayne Slater, *Few Texas Voter–Fraud Cases Would Have Been Prevented by Photo ID Law, Review Shows*, Sep. 8, 2013, http://www.dallasnews.com/news/politics/headlines/20130908–few-texas–voter–fraud–cases–would–have–been-prevented–by–photo–id–law–review–shows.ece. Of course not all violators are caught or prosecuted, but statistics still indicate that the problem of voter fraud is slight.

**16.** The undersigned recognizes the apparent inconsistency that ACRU as an organization can pursue a claim for what is also essentially a generalized grievance about Zavala County's failure to follow the law, while ACRU on behalf of its members cannot. The fact remains, though, that *Havens* seems to indicate

that organizational standing is much easier to establish than associational standing.

**17.** Defendant points to *Charles H. Wesley Education Foundation, Inc. v. Cox*, for the proposition that "where an alleged injury is to a statutory right, standing exists 'even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute.' " 408 F.3d 1349, 1352 (11th Cir.2005) (quoting *Warth v. Seldin*, 422 U.S. 490, 514, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The standing question, however, is whether the "statutory provision on which the claim rests properly can be understood as granting persons in the plaintiffs position a right to judicial relief." *Warth*, 422 U.S. at 500, 95 S.Ct. 2197. The NVRA still requires a plaintiff to be "aggrieved," which is understood to be the same as Article III standing requirements, *see Fowler*, 178 F.3d at 362–63 (finding the NVRA to eliminate prudential limitations on standing), meaning a plaintiff must demonstrate an injury in fact.

**18.** *But see Judicial Watch, Inc. v. King*, 993 F.Supp.2d 919 (S.D.Ind.2012); *Common Cause of Colorado v. Buescher*, 750 F.Supp.2d 1259, 1271 (D.Colo.2010) ("Any burden on the right to vote, even if it is no more than the cancellation of a voter's records in violation of the NVRA, constitutes an injury-in-fact for

■ The undersigned does note, however, that Plaintiff's failure to name any specific members is not fatal to standing. A plaintiff is not required to name names in a complaint in order to properly allege injury in fact to its members. *See Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1160 (11th Cir.2008); *Bldg. and Const. Trades Council of Buffalo v. Downtown Develop., Inc.*, 448 F.3d 138, 145 (2d Cir.2006). At later stages of litigation, Plaintiff may have to come forward with evidence to support its allegations that specific members of its organization who are eligible to vote in Texas have been harmed. *See Summers v. Earth Island Instit.*, 555 U.S. 488, 499, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (requiring, at the merits stage, evidence of specific individual members of an organization). But for now, at the pleading stage, such proof is unnecessary.

### 2. Failure to State a Claim

As previously discussed, Defendant also argues that Plaintiff has failed to sufficiently state a claim for relief under Rule 12(b)(6). Again, Defendant asserts that registration rates at or above 100% are perfectly consistent with adherence to the NVRA because of the suspense list and the requisite waiting times before a voter can be removed from the voting list. Citing *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), Defendant argues that simply pointing to statistics that voter registration rates exceed 100% is insufficient to cross the line from a possible claim to a plausible claim that Defendant has violated the NVRA.

The undersigned finds that Plaintiff has adequately stated a claim for relief. Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that "[fails] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion to dismiss, however, "is viewed with disfavor and is rarely granted." *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982) (internal quotations omitted). Accordingly, the complaint must be liberally construed in the plaintiff's favor, all reasonable inferences must be drawn in favor of the plaintiff's claims, and the factual allegations of the complaint must be taken as true. *See Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.1986).

Rule 8 of the Federal Rules of Civil Procedure merely requires pleadings to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To comply with Rule 8, a plaintiff must include enough facts to give a defendant fair notice

standing purposes."). In *Judicial Watch*, for example, the court addressed nearly identical arguments to those raised here, reaching a contrary conclusion for standing. The court held that "[t]here can be no question that a plaintiff who alleges that his right to vote has been burdened by state action has standing to bring suit to redress that injury." 993 F.Supp.2d at 924. In reaching that conclusion, the court looked to several Supreme Court cases where the Court found legitimate state interests in enacting legislation that could potentially curb voter fraud, such as requiring voters to present an ID before voting. *See, e.g, Crawford*, 553 U.S. 181, 128

S.Ct. 1610; *Purcell*, 549 U.S. 1, 127 S.Ct. 5. According to the district court, "If the state has a legitimate interest in preventing [voter fraud and vote dilution] from occurring, surely a voter who alleges that such harm has befallen him or her has standing to redress the cause of that harm." 993 F.Supp.2d at 924. The undersigned, however, respectfully disagrees that mere grievances are sufficient to establish the harm necessary for standing. *See, e.g., Thornburg v. Gingles*, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986) (holding that vote dilution claims under the Voting Rights Act must be supported by a threshold level of numerical substantiality).

of the claims against it. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. In all, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief.'"" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

With this standard in mind, the NVRA requires a state to make a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters, and allows any aggrieved person to file suit to enforce the provision. Here, the complaint essentially alleges failures to do just that, stating: (1) Defendant, as the person designated by Texas law, has a federal obligation to maintain accurate and current voter rolls which only contain the names of eligible voters residing in Zavala County; (2) Defendant must conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists; (3) Voter rolls maintained by Defendant for Zavala County contain more voters registered to vote than citizens eligible to vote; (4) an implausible 105% voter registration rate indicates that Defendant has failed to make reasonable efforts to conduct voter list maintenance programs; and (5) AC-RU's members are aggrieved because of the potential for voter fraud and vote dilution.

Taking the allegations as true, this is sufficient to state a claim. *Twombly* emphasized that a complaint need only contain enough facts "to raise a reasonable expectation that discovery will reveal evidence" of a violation. 550 U.S. at 556, 127 S.Ct. 1955. The ultimate test under *Twombly* is whether or not pleadings are consistent with one theory of illegal conduct but just as much in line with a "wide swath" of legal conduct. 550 U.S. at 554, 127 S.Ct. 1955. As discussed above, registration rates should be below 70%. Certainly, unreasonably high voter registration rates, without more, do not prove Defendant has violated the NVRA—only discovery will reveal whether this is so. But the unreasonableness of the registration rate is sufficient to show that the prevailing theory behind the statistical anomaly is that Defendant has not followed her duties in maintaining voter rolls. There simply are no other viable theories that would suggest legal conduct has produced the unreasonably high registration rate. This strong inference of a violation of the NVRA is sufficient to survive a Rule 12(b)(6) motion.

### 3. Notice

Finally, Defendant argues that Plaintiff failed to comply with the NVRA's notice requirement. Defendant argues that although Plaintiff sent her a letter that noted there were more registered voters in Zavala County than citizens eligible to vote, the letter did not explicitly state that there was a violation of the NVRA and was thus too vague to provide her with proper notice.

The undersigned finds that Plaintiff has alleged sufficient notice. Section 20510, in pertinent part, states:

(1) A person who is aggrieved by a violation of this chapter may provide written notice of the violation to the chief election official of the State involved.

(2) If the violation is not corrected within 90 days after receipt of a notice under paragraph (1) ..., the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

(3) If the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not ·provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2).

52 U.S.C. § 20510(b). Despite the apparent permissive language, no standing is conferred without proper written notice. *Scott v. Schedler,* 771 F.3d 831, 835 (5th Cir.2014).[19]

There is very little guidance within this circuit about the requisite specificity of written notice under the NVRA. However, language and legislative history of the NVRA "indicate that Congress structured the notice requirement in such a way that notice should provide states in violation of the Act an opportunity to attempt compliance before facing litigation." *Ass'n of Community Orgs. for Reform Now v. Miller,* 129 F.3d 833, 838 (6th Cir.1997); *see also Schedler,* 771 F.3d at 836 (citing *Miller* favorably).

According to the complaint, Plaintiff and others sent Zavala County election officials multiple notices about the failure to adequately maintain voter rolls throughout

2012 and 2013. Then, on September 12, 2013, ACRU, on its own behalf and on behalf of members and supporters of ACRU who are registered to vote in the State of Texas, sent a statutory notice letter to Zavala County election officials about failures to comply with federal voter registration laws. The letter explained that there were more registered voters in Zavala County than citizens eligible to vote. The letter also requested a variety of publicly available information that might tend to indicate whether Defendant was in compliance with the NVRA, such as current registration data, the number of purged voters, the number of notices sent to inactive voters, the number of voters removed due to criminal convictions, and the most recent number of registered voters. The letter also requested inspection of all records concerning the implementation of programs and activities to ensure the accuracy and currency of official voter lists. Finally, the letter stated that a lawsuit might be brought to ensure compliance with the requirements of federal voter registration laws.

Although the undersigned would be inclined to find that the complaint alone fails to allege proper notice, the Court can also look at other sources when ruling on a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007) (citing 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007)) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by refer-

---

19. Because the NVRA notice provision is nonjurisdictional, *see Leeson v. Transamerica Disability Income Plan,* 671 F.3d 969, 976–77 (9th Cir.2012), a complaint should· be dismissed pursuant to Rule 12(b)(6) when a plaintiff fails to properly plead notice. *See*

*Huggins Realty,* 634 F.3d at 795 n. 2 ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of ... statutory standing is properly granted under Rule 12(b)(6).")

ence, and matters of which a court may take judicial notice.") Of significant importance, Defendant attached the notice letter in question to the answer to Plaintiff's complaint, *see* ECF No. 12–1, which was filed simultaneously with the motion to dismiss. *See Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir.2000) (a court may consider documents attached to a motion to dismiss).

After reviewing the actual letter, the undersigned finds that notice was adequate. In pertinent part, the letter, sent to the Zavala County Clerk and copied to Defendant and the Texas Secretary of State, explains that ACRU is notifying the clerk that Zavala County is in apparent violation of Section 8 of the National Voter Registration Act.[20] It informs the clerk that federal law requires election officials to make a reasonable effort to maintain voter registration lists free of dead voters, ineligible voters, and voters who have moved away. The letter even cites specifically to the pertinent statute. It further states, "In short, your county has significantly more voters on the registration rolls than it has eligible live voters." Ex. A, ECF No. 12–1 at 1. The letter then warns the clerk that if the county clerk does not work towards full compliance with the NVRA, suit may be filed.

The letter clearly states the alleged violation of the NVRA, provides the specific statute in question, states the factual basis for the purported violation, and warns that ACRU might file suit if changes are not made. This is adequate under the NVRA to provide Defendant a sufficient opportunity to attempt compliance before facing litigation.

## B. Motion to Amend Complaint

█ Plaintiff also seeks to amend its complaint, essentially to remove Count 2 of the original complaint and to add an additional plaintiff. Rule 15(a) of the Federal Rules of Civil Procedure states that a court "should freely give leave when justice so requires." However, a court need not allow amendment when there is substantial reason to deny leave. "The types of reasons that might justify denial of permission to amend a pleading include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and undue prejudice to the opposing party." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 598 (5th Cir. 1981). Also, "[i]t is within the district court's discretion to deny a motion to amend if it is futile," meaning "that the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872–73 (5th Cir.2000).

The undersigned finds insufficient reasons to permit amendment. The parties have already stipulated to the dismissal of Count Two. It is unnecessary to officially amend a complaint to reflect this. It is also both futile and unnecessary to add Jan LaRue as a plaintiff to the lawsuit. First, as discussed above, ACRU need not specifically name a member in its complaint to survive a motion to dismiss. Second, the proposed amended complaint fails to allege that Jan LaRue complied with the notice requirements of the NVRA. In contrast with other circuits, the Fifth Circuit has held that a plaintiff cannot piggyback on the notice provided by another plaintiff. *See Schedler,* 771 F.3d at 836. Because LaRue has not provided sufficient notice under the Act, she would immediately be subject to dismissal.

Furthermore, the proposed complaint offers nothing but sheer speculation of in-

---

**20.** The section of the NVRA dealing with updating the list of registered voters is commonly referred to as Section 8. *See Schedler,* 771 F.3d at 838 n. 12.

jury for LaRue. Identical to the arguments above, the complaint alleges that LaRue suffered an injury in fact because of her undermined confidence in the electoral system and the possibility of vote dilution. As explained above, this argument has no merit. In sum, because amendment would be futile, the undersigned recommends that the motion to amend be denied.

## IV. CONCLUSION

In conclusion, the undersigned finds that Plaintiff has organizational standing to proceed, has provided adequate notice, and has adequately stated a claim for relief. Accordingly, the undersigned **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**. Furthermore, because Plaintiff's motion to amend would be futile, the undersigned **RECOMMENDS** that Plaintiff's motion for leave to amend be denied.

## V. NOTICE

The United States District Clerk shall serve a copy of this report and recommendation on all parties either by (1) electronic transmittal to all parties represented by an attorney registered as a filing user with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) certified mail, return receipt requested, to any party not represented by an attorney registered as a filing user. Pursuant to 28 U.S.C. § 636(b)(1), any party who wishes to object to this report and recommendation may do so within fourteen days after being served with a copy. Failure to file written objections to the findings and recommendations contained in this report shall bar an aggrieved party from receiving a *de novo* review by the District Court of the findings and recommendations contained herein, *see* 28 U.S.C. § 636(b)(1)(c), and shall bar an aggrieved party from appealing "the unobjected-to proposed factual findings and legal conclusions accepted by the District Court" except on grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir.1996).

**SIGNED AND ENTERED** on February 20, 2015.